# Exhibit 1

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| **ANDREA D. WILLIAMS**<br>          Plaintiff,<br><br>**v.**<br><br>**WELLS FARGO BANK, N.A.,**<br><br>          Defendant. | **Case No. 1:24-cv-02241** |

## <u>PLAINTIFF'S OPPOSITION TO WELLS FARGO'S COMBINED MOTION TO DISMISS AND MOTION TO STRIKE THE COMPLAINT</u>

Plaintiff, Andrea Williams ("Ms. Williams"), respectfully submits this response in opposition to Wells Fargo's Combined Motion to Dismiss and Motion to Strike the Complaint pursuant to Federal Rule of Civil Procedure (FRCP) 12(b)(6).

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................... 1

LEGAL STANDARD ............................................................................................... 1

ARGUMENT ............................................................................................................ 1

    I.    Ms. Williams Re-Opened Bankruptcy Does Not Foreclose Her Standing ...................... 1

    II.    The Complaint sufficiently states a claim under the Illinois Consumer Fraud Act. ........... 5

    A. Wells Fargo's conduct was an unfair practice. ................................................... 5

        *1.    Wells Fargo's mortgage modification practices offend public policy.* ........................ 6

        *2.    Wells Fargo's conduct was immoral, unethical, oppressive, or unscrupulous.* ............. 9

        *3.    Wells Fargo's conduct caused substantial injury to consumers, including Ms.
Williams.* ........................................................................................................ 11

    B. Wells Fargo intended Ms. Williams rely on the error. .................................... 12

    C. Wells Fargo's conduct was the proximate cause of Ms. Williams' harm. ....................... 14

    III.    The ICFA claim is timely. ................................................................... 16

    IV.    Granting a Motion to Strike is improper. ................................................... 17

CONCLUSION ........................................................................................................ 18

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009) ................................................................................. 1, 13

*In re Trahan,*
460 B.R. 207, 213 (Bankr. C.D. Ill. 2011) ................................................................ 2

*Lee v. Deloitte & Touche LLP,*
428 F. Supp. 2d 825, 829 (N.D. Ill. 2006) ............................................................... 4

*Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortg. Loan Trust,*
787 F.Supp.2d 747, 752 (N.D. Il. 2011) .................................................................. 6

*Clark v. Receivables Mgmt. Partners, LLC,*
2022 U.S. Dist. LEXIS 44468, at 6-7 (N.D. Ill. Mar. 14, 2022) ............................. 12

*Fleischer v. Accesslex Inst.,*
2019 U.S. Dist. LEXIS 144661, at 16 (N.D. Ill. Aug. 26, 2019) ............................. 16

*Geary v. Maryville Acad.,*
2012 U.S. Dist. LEXIS 82850, at 3-4 (N.D. Ill. June 12, 2012) ............................. 17

*In re Allen,* 2008 Bankr.
LEXIS 366, at 1 (Bankr. N.D. Ga. Feb. 14, 2008). ................................................. 2

*In re Chicago, M., S. P. & P. R. Co.,*
1988 U.S. Dist. LEXIS 10309, at 4 (N.D. Ill. Sep. 9, 1988) ..................................... 5

*In re Consol. Indus. Corp.,*
330 B.R. 712, 715 (Bankr. N.D. Ind. 2005) ............................................................. 3

*In re Efoora, Inc.,*
472 B.R. 481, 488 (Bankr. N.D. Ill. 2012) ............................................................... 3

*In re Ryder,*
LEXIS 2279, at 4 (Bankr. S.D. Iowa Aug. 7, 2001) .................................................. 2

*In re Taxman Clothing Co.,*
49 F.3d 310, 315 (7th Cir. 1995) ............................................................................. 2

*In re Wells,*
87 B.R. 732, 735 (Bankr. N.D. Ga. 1988) ............................................................... 2

*In the Matter of Andreuccetti,*
975 F.2d 413, 417 (7th Cir. 1992) ........................................................................... 2

*Izumi Saika v. Ocwen Loan Servicing, LLC,*
357 F. Supp. 3d 704, 718 (N.D. Ill. 2018) ............................................................. 14

*Leszanczuk v.Carrington Mortg. Servs., LLC,*
21 F.4th 933, 940–41 (7th Cir. 2021) ................................................................ 7,8,9

*Levey v. Sys. Div., Inc. (In re Teknek, LLC),*
563 F.3d 639, 645 (7th Cir. 2009) ........................................................................... 2

*Lowry v. Wells Fargo Bank, N.A.*,
2016 WL 4593815, at 7 (N.D. Ill.  2016) ...................................................................... 6

*Maxwell v. Wells Fargo Bank, N.A.,*
2021 U.S. Dist. LEXIS 62622, at 20 (N.D. Ill. Mar. 31, 2021) ................................. 5, 9

*Nangle v. Surratt-States (In re Nangle)*,
288 B.R. 213, 216 (B.A.P. 8th Cir. 2003) ..................................................................... 2

*Pillows v. Cook Cnty. Recorder of Deeds Office*,
2019 U.S. Dist. LEXIS 189308, at 3 (N.D. Ill. Oct. 31, 2019). .................................... 1

*Reed v. Farmers Ins. Group*,
720 N.E.2d 1052, 1057, 242 Ill. Dec. 97, 102, 188 Ill.2d 168, 174–75 (Ill. 1999) ....................... 6

*Saccameno v. Ocwen Loan Servicing, LLC,*
372 F.Supp.3d 609, 630 (N.D. Ill.  2019) .................................................................5,6,8,9,10

*Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc.*,
633 F.Supp.2d 610, 616 (N.D. Ill. 2009) ................................................................... 10

*Wigod v. Wells Fargo Bank, N.A.*,
673 F.3d 547, 582 (7th Cir. 2012) ................................................................... 9, 12,14

*Wilson v. Harris N.A.*,
2007 WL 2608521, at 8 (N.D. Ill. Sept. 4, 2007) ...................................................... 12

*Jackson Jordan, Inc. v. Leydig, Voit & Mayer,*
633 N.E.2d 627, 630-31 (1994) .................................................................................16

*Riemer v. Chase Bank, N.A.*,
275 F.R.D. 492, 494 (N.D. Ill. 2011)..........................................................................17

## **INTRODUCTION**

Wells Fargo's motion is rife with factual arguments against Ms. Williams ICFA claim that are improper for a Rule 12(b)(6) motion, including their argument that Ms. Williams claim is time barred. As stated in the Complaint, Andrea Williams was alerted by an August 2023 letter from Wells Fargo that "apologized" for mishandling her mortgage servicing and contained a check for $45,000. This letter served as notice that she may have a valid legal claim. The August 2023 letter triggered notice inquiry and Ms. Williams timely filed suit shortly thereafter. When the facts pled are taken as true with all relevant favorable inferences drawn in Ms. Williams' favor, it is clear that Wells Fargo's motion fails.

## **LEGAL STANDARD**

Ms. Williams agrees with defendants standard for a Motion to Dismiss under *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), adding that while the Complaint must allege "more than a sheer possibility that a defendant has acted unlawfully," it need not set out "detailed factual allegations." *Id*. Additionally, in evaluating a motion to dismiss, this Court must "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Pillows v. Cook Cnty. Recorder of Deeds Office*, 2019 U.S. Dist. LEXIS 189308, at 3 (N.D. Ill. Oct. 31, 2019).

## **ARGUMENT**

### I.     **Ms. Williams Re-Opened Bankruptcy Does Not Foreclose Her Standing**

Wells Fargo's first argument is that the Chapter 7 Trustee is the only proper party to bring this claim. This position states the general rule, but there is an exception applicable here. 11 U.S.C.S. § 726 governs distribution of the property of the Bankruptcy Estate. 11 U.S.C.S. §

726(a)(1)-(6) lists the priority of payments. 11 U.S.C.S. § 726(a)(6) makes clear that the Debtor is entitled to any surplus that exists after payment of all debts. "Therefore, the Bankruptcy Code recognizes a debtor's interest in proceeds from the liquidation of an asset of the estate to the extent that the value of such asset exceeds the total amount of the claims payable under 11 U.S.C.S. § 726(a)(1)-(5)." *In re Allen*, 2008 Bankr. LEXIS 366, at 1 (Bankr. N.D. Ga. Feb. 14, 2008). The *Allen* court also noted that instances of a surplus rarely occur.

Every Court that has confronted the "debtor surplus" fact pattern acknowledges Debtors have protected rights in a surplus. This includes the right to appeal, see *In the Matter of Andreuccetti*, 975 F.2d 413, 417 (7th Cir. 1992); the right to object to claims, see *In re Ryder*, 2001 Bankr. LEXIS 2279, at 4 (Bankr. S.D. Iowa Aug. 7, 2001); and the right to object to orders of the Court, see *Nangle v. Surratt-States (In re Nangle)*, 288 B.R. 213, 216 (B.A.P. 8th Cir. 2003).

Furthermore, Chapter 7 Trustees wield great, but not unlimited power. "The purpose and duty of the trustee is to gather the estate's assets for pro rata distribution to the estate's creditors." *Levey v. Sys. Div., Inc. (In re Teknek, LLC)*, 563 F.3d 639, 645 (7th Cir. 2009). "Both Chapter 7 trustees and the UST "are responsible for understanding the boundaries of a panel trustee's power and authority" and for ensuring that those boundaries are not exceeded." *In re Trahan*, 460 B.R. 207, 213 (Bankr. C.D. Ill. 2011). "It should go without saying that neither the trustee in bankruptcy nor the trustee's lawyer has a duty to collect an asset of the debtor's estate if the cost of collection would exceed the value of the asset. His duty is to maximize the value of the estate; which is to say the net assets." *In re Taxman Clothing Co*., 49 F.3d 310, 315 (7th Cir. 1995) (internal citations and quotations omitted). The Chapter 7 Trustee has a statutory duty to analyze tort claims and to decide whether and how to pursue the tort claims on the estate's behalf pursuant to 11 U.S.C. Section 704. See, *In re Wells*, 87 B.R. 732, 735 (Bankr. N.D. Ga. 1988).

The Chapter 7 Trustee also exercises business judgment in the exercise of their statutory duties. "The business judgment test, as it is sometimes called, differs from the business judgment rule under corporate law. The bankruptcy court reviews the trustee's business judgment to determine independently whether the judgment is a reasonable one." *In re Efoora, Inc*., 472 B.R. 481, 488 (Bankr. N.D. Ill. 2012) (internal citations and quotations omitted). "A bankruptcy trustee is not required to prosecute every cause of action belonging to the bankruptcy estate. Instead, the trustee is given a substantial degree of discretion in deciding how best to administer the estate committed to his care and his actions are measured by a business judgment standard. So long as the trustee's decision concerning how or whether to administer an asset or to pursue a cause of action falls within the proper scope of the trustee's business judgment, the trustee's decision will be upheld." *In re Consol. Indus. Corp*., 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005) (internal citations and quotations omitted).

In the present case, the Trustee, relying upon his business judgment, has engaged undersigned as his special counsel to pursue the litigation for the benefit of the debtor's bankruptcy estate. These are all actions authorized by 11 USCS §704.  The Trustee, having been advised of the value of this tort case, and understanding that the bankruptcy estate is interested in every dollar recovered until such time as the estate has received full payment of the claims filed, the trustee's compensation, and the costs of administration, and that the debtor has an interest in the surplus of any recovery, has directed that the case be maintained in the Debtor's name.

The Trustee's strategy is a proper exercise of business judgment Wells Fargo is not at liberty to challenge. See, *Id.* Just because the Trustee has the right to pursue a pre-petition cause of action does not mean that the claim may only be brought in the Trustee's name. This is

especially true if a surplus can be recovered and the Trustee, in the exercise of business judgment, believes it advantageous to allow the debtor to remain the named plaintiff.

Likewise, Wells Fargo cannot argue that Williams lacks standing to bring the claim because 11 USCS § 726(a)(6) preserves her interest in the surplus.[1] This means that Williams and the Trustee are both interested in and have rights in the successful outcome of this litigation. Another district court faced with this argument explained why it failed. "Standing generally has two aspects-constitutional (Article III) standing and prudential considerations of standing, which involve judicially self-imposed limits on the exercise of federal jurisdiction. Precedent instructs that the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III. Specifically, Article III standing is comprised of three elements: (1) injury in fact; (2) causation; and (3) redressability. Because issues of Article III standing relate to a court's subject matter jurisdiction over a matter, they must be addressed whenever they are present." *Lee v. Deloitte & Touche LLP*, 428 F. Supp. 2d 825, 829 (N.D. Ill. 2006) (internal citations and quotations omitted).

For the purpose of this analysis, Article III standing is met in this case because Williams has been injured as a result of Wells Fargo and that injury is redressable in damages even if the first portion of the recoverable damages belong to the bankruptcy estate. *Id.* at 830. Unlike the plaintiff in *Lee,* this case does not require the substitution of the Bankruptcy Trustee as the real party in interest for two reasons. First, Williams retains her rights in the surplus under 11 USCS § 726(a)(6). Second, the Bankruptcy Trustee, in the exercise of business judgment, has determined it would be more advantageous to the estate to pursue the claim in the name of Williams. "Matters

---

[1] Williams' counsel would also request the Court force Wells Fargo to disclose to the Court, confidentially, their settlement in *Garcia v. Wells Fargo*. If the Court elects to do so, then the Court will learn that Wells Fargo has no good faith basis to assert there is no likelihood of a surplus recovery in this case.

involving business judgment are within the discretion of the trustee, and while the court retains power to review the trustee's business decisions, it should overturn them only when they amount to an abuse of discretion." *In re Chicago, M., S. P. & P. R. Co.*, 1988 U.S. Dist. LEXIS 10309, at 4 (N.D. Ill. Sep. 9, 1988).

**II.     The Complaint sufficiently states a claim under the Illinois Consumer Fraud Act.**

To state a claim under ICFA, Ms. Williams must allege Wells Fargo's conduct was a proximate cause of her harm through "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Maxwell v. Wells Fargo Bank, N.A.,* 2021 U.S. Dist. LEXIS 62622, at 20 (N.D. Ill. Mar. 31, 2021) (internal citations omitted). To be actionable, this wrongful conduct must have proximately caused legal injury.

**A. Wells Fargo's conduct was an unfair practice.**

In determining whether a given act or course of conduct is unfair, Illinois courts look to three factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers.*" Id.* at 21.  In addition, "[all] three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Saccameno v. Ocwen Loan Servicing, LLC,* 372 F.Supp.3d 609, 630 (N.D. Ill.  2019).

1. *Wells Fargo's mortgage servicing practices offend public policy.*

"The public policy of the state is found in its constitution, its statutes, and its judicial decisions." *Reed v. Farmers Ins. Group*, 720 N.E.2d 1052, 1057, 242 Ill. Dec. 97, 102, 188 Ill.2d 168, 174–75 (Ill. 1999). "In previous judicial decisions, unfairness claims under the ICFA have been allowed where a mortgage servicer violated HAMP or Treasury Directives implementing HAMP. "[A] plaintiff may predicate an ICFA unfairness claim on violations of other statutes or regulations, like HAMP and IHPA, that themselves do not allow for private enforcement." *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortg. Loan Trust, Series 2003-1*, 787 F.Supp.2d 747, 752 (N.D. Il. 2011). "Failure to honestly and effectually implement HAMP guidelines constitutes an unfair business practice under the ICFA." *Lowry v. Wells Fargo Bank, N.A.*, 2016 WL 4593815, at 7 (N.D. Ill.  2016)(internal citations omitted). In addition, courts in this district have found violations of the terms of consent decrees actionable as unfair conduct under the ICFA. See, *Id.* at 9 and *Saccameno* at 630 holding "[a] practice offends public policy under ICFA where it 'violates statutory or administrative rules establishing a certain standard of conduct.' This can encompass standards of conduct imposed by consent decrees and settlement agreements." (Internal citations omitted). Against this backdrop, it is evident that Ms. Williams Complaint sets forth, in great detail, why a jury may readily find that Wells Fargo's conduct in this case is unfair under ICFA.

As stated in the Complaint and summarized herein, a 2010 investigation by the OCC found that Wells Fargo had numerous deficiencies in its mortgage modification and foreclosure practices including failing to adequately oversee the processes, failing to comply with applicable laws and failure to adequately audit its procedures. As a result, Wells Fargo entered multiple consent orders intended to address these deficiencies and then failed to abide by the terms of these consent decrees. Wells Fargo was fined $70 million dollars for its failures to comply with its obligations under the

consent decrees including its obligations to properly handle loss mitigation processes. However, Wells Fargo continued to engage in deception regarding its conduct with its regulator. (Complaint ¶¶35-39).

It is ironic that Wells Fargo bases an argument for dismissal on confusion as to **which** consent decree set out its wrongdoing. Rare indeed is the Defendant who has been hit with enough consent decrees to be punch drunk and confused over which one of them it is currently violating. Williams' response is that there is a consistent theme beginning with the first consent decree and continuing to the present consent decrees. All of them told Wells Fargo that it must properly handle loss mitigation, including loan modifications, that it must not cause consumer harm, and that its board was responsible for ensuring the Bank complied with its legal obligations under the consent decrees.

The consent decrees paint a picture of a rogue operator only interested in wearing down its regulators and never interested in correcting its failings or ceasing widespread consumer harm. The argument is also a misapprehension of the Complaint. The Complaint is not "throwing a pot of spaghetti at the wall" hoping something sticks, but rather laying out a detailed timeline of conduct meant to show when and how Wells Fargo violated public policy to fully explain why the harm against Ms. Williams was known, systematic, spanned many years, and completely *avoidable* had Wells Fargo properly complied with its obligations under federal banking regulations and the various consent decrees.

To quote their own case, "A practice offends public policy if it violates a standard of conduct embodied in a statute, the common law, or otherwise, i.e., if 'it is within at least the penumbra of some common-law, statutory or other established concept of unfairness.'" *Leszanczuk v.Carrington Mortg. Servs., LLC,* 21 F.4th 933, 940–41 (7th Cir. 2021) (internal citation omitted).

The Court in *Leszanczuk* is consistent with the Court in *Saccameno* in what they would accept as a violation of public policy. In fact, the use of the language "within at least the penumbra" suggests a broad standard applying to conduct that would be a violation of public policy. *Saccameno* makes clear standards of conduct from consent decrees can serve as public policy.

Equally preposterous is Wells Fargo's position that Plaintiff cannot show Wells Fargo owed it any duty because the loan was an FHA loan instead of a Fannie or Freddie loan. FHA insurance is administered by HUD. Mortgage servicing obligations for FHA loans are published in the HUD Handbook 4000.1 at https://www.allregs.com/tpl/?r=c105559e-5989-49fc-b4d8-81a7e0d23840 (last viewed May 28, 2024). The FHA Handbook states in pertinent part: Servicers must service all FHA-insured Mortgages in accordance with FHA requirements and all applicable laws. Mortgagees must comply with all laws, rules, and requirements applicable to mortgage servicing, including full compliance with the applicable requirements under the purview of the Consumer Financial Protection Bureau (CFPB), including the Real Estate Settlement Procedures Act (RESPA) and the Truth in Lending Act (TILA), and, if applicable, Ginnie Mae's mortgage-backed securities requirements. FHA requirements that are more stringent or restrictive than those provided for in applicable law are set forth in this Handbook 4000.1 and the Mortgagee must comply with these requirements. See Handbook 4000.1 at page 1162.

Given that many of the consent decrees discuss violations of these very laws and that the CFPB sanctioned Wells Fargo more than a billion dollars for its mortgage servicing misconduct, it seems readily apparent that Wells Fargo was not servicing FHA insured loans (or any other mortgage loans) in compliance with any guidelines, including the FHA's mandate. Therefore, Wells Fargo's position is wrong. Frankly, the argument is so outrageous, Wells Fargo should be

required to furnish its brief making this argument to its prudential regulators and the general counsel for the FHA.

Wells Fargo also argues that Williams cannot bring a third-party beneficiary claim based upon Wells Fargo's failure to service her mortgage in accordance with industry standards embodied in the GSE guidelines. For this proposition, Wells Fargo argues a district court case from 2008 while ignoring binding Seventh Circuit precedent that contradicts its position including *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 582 (7th Cir. 2012), *Saccameno,* and *Leszanczuk.* All of these cases hold that an ICFA violation can arise from conduct which violates another statute that does not provide a private right of action in its own right.

2.  *Wells Fargo's conduct was immoral, unethical, oppressive, or unscrupulous.*

Wells Fargo again misconstrues case law on the factors for establishing an unfair practice by stating that offending public policy is not enough when both the *Saccameno* decision and the *Geske* decision they reference in their motion say otherwise. *Geske* explicitly states that satisfying one factor may not be enough depending on the degree to which the one factor is alleged. (Mot. to Dismiss. At 7.). That is not the same thing as saying the Complaint must allege all three to assert a successful ICFA claim. The degree to which the Plaintiff alleges Wells Fargo violated public policy is severe as established by the very lengthy history of violated consent decrees. That alone is enough to establish the conduct is immoral, unethical, oppressive, or unscrupulous under ICFA in this instance, however the Complaint goes even further by alleging all three *Maxwell* factors are met to show Wells Fargo's unfair conduct.

"A practice may be considered immoral, unethical, oppressive, or unscrupulous if it imposes a lack of meaningful choice or an unreasonable burden on the consumer." *Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc.*, 633 F.Supp.2d 610, 616 (N.D. Ill. 2009). Here, Ms.

Williams could not avoid Wells Fargo's practices. Consumers have no choice as to their mortgage servicer. "After all, Saccameno had no choice in selecting Ocwen as her loan servicer and she had no ability to get rid of Ocwen after it began mishandling her account." *Saccameno v. Ocwen Loan Servicing, LLC*, 372 F.Supp.3d 609, 631 (N.D. Ill. 2019).

Wells Fargo's argument that Ms. Williams could have escaped its clutches by choosing a different mortgage servicer is the statement of an author with absolutely zero knowledge of how the mortgage servicing industry operates. "Since consumers do not choose their mortgage servicers they cannot take their business elsewhere."[2] Consumers do not choose mortgage servicers, instead, investors and owners of mortgages impose mortgage servicers on consumers. There is no "draft" for mortgage servicers and consumers do not get to opt-out from a bad mortgage servicer. Instead, consumers are stuck with the mortgage servicer provided by the owner or investor until such time as mortgage servicing rights are transferred. Beyond that point, Wells Fargo, in its infinite incompetence, was one of the largest (or the largest) mortgage servicers in the entire nation during the entire period of time Williams was under its boot. Williams had no meaningful choice of mortgage servicer at any point in the timeline set out in her complaint.

In the instant case, Ms. Williams could not escape Wells Fargo. Ms. Williams could not choose another servicer. Ms. Williams could not force Wells Fargo to properly evaluate her account for a loan modification. In fact, Ms. Williams was completely unaware of Wells Fargo's misconduct towards her until she received Wells Fargo's letter in 2023, *years after Wells Fargo detected the error*. Wells Fargo possessed all the information and all of the power in the relationship between mortgage servicer and consumer.

---

[2] https://files.consumerfinance.gov/f/documents/Mortgage_Servicing_Supervisory_Highlights_11_Final_web_.pdf last viewed May 28, 2024.

    *3.   Wells Fargo's conduct caused substantial injury to consumers, including Ms. Williams.*

       Ms. Williams' complaint at ¶148(a)-(f) lists harms proximately caused by Wells Fargo's conduct. The Complaint details how Wells Fargo was required by federal law to engage in accurate and timely loss mitigation and to offer loan modifications to certain borrowers who were in default; how Wells Fargo admittedly failed to offer Ms. Williams a loan modification; and how Wells Fargo then foreclosed on Ms. Williams, and then pursued a deficiency judgment against Ms. Williams, forcing her to file Chapter 7 bankruptcy, and evicted her from her Family Home. (Complaint, ¶¶2-11). Wells Fargo claims this occurred because of a "faulty calculation." However, Ms. Williams Complaint details the extreme and outrageous conduct of Wells Fargo. (*See*, generally, Complaint ¶¶26-148).

       In summary, for a period of 5-1/2 years, from April 13, 2010, through October 20, 2015, Wells Fargo failed to detect multiple systemic errors in its own mortgage loan modification underwriting tool - an automated decisioning tool - that caused an automated miscalculation for purposes of determining consumer eligibility for loan modifications under HAMP. (Complaint, ¶52). Wells Fargo was not required to develop and use this tool. Despite being under no obligation to develop its own automated calculation tool, Wells Fargo undertook to develop this tool instead of utilizing the tool provided by the Treasury Department. After developing this tool, Wells Fargo failed to ensure that the tool worked correctly, failed to audit the tool's calculations, and failed to audit the tool's software for regulatory compliance.

       This failure led Wells Fargo to violate its HAMP obligations, as well as other legal and regulatory obligations over a period of *years*. As the Complaint states, between 2010 and 2018, Wells Fargo improperly and unethically denied thousands of borrowers, like Ms. Williams, for a mortgage loan modification due to Wells Fargo's failure to address multiple systemic errors in its

mortgage servicing which Wells Fargo was well aware of for years before addressing the errors.
(Complaint, ¶35). Harming thousands of families and causing at least 500 families to lose their
home certainly constitutes substantial actual consumer harm for purposes of the ICFA. "A practice
causes substantial injury to consumers if it causes *significant* harm to the plaintiff and has the
potential to cause injury to a large number of consumers." *Wilson v. Harris N.A.,* No. 06 C 5840,
2007 WL 2608521, at 8 (N.D. Ill. Sept. 4, 2007). Ms. Williams complaint more than adequately
pleads how she (and the American public) suffered substantial injuries at the hands of Wells Fargo.

### B. Wells Fargo intended Ms. Williams rely on the error.

Wells Fargo took Andrea Williams' home and took a deficiency judgment against her as a
result of its failures as a mortgage servicer. How much reliance should one person demonstrate?
Wells Fargo's imposed its will on Andrea Williams that was rooted in wrongdoing and illegal
conduct. Courts in this jurisdiction have repeatedly held that for an ICFA claim, it is sufficient to
allege that "[t]he defendant committed a deceptive or unfair act and intended that the plaintiff rely
on that act." *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 575 (7th Cir. 2012). This is so
because even "innocent misrepresentations or omissions intended to induce the plaintiff's reliance
are actionable under [ICFA]." *Clark v. Receivables Mgmt. Partners, LLC,* 2022 U.S. Dist. LEXIS
44468, at 6-7 (N.D. Ill. Mar. 14, 2022) (internal citations omitted). As such, for purposes of the
"intent" requirement, it does not matter whether [Wells Fargo] "intentionally misled Plaintiff in
any way," *Id.* Ms. Williams did not have a choice but to rely on Wells Fargo. They were her
mortgage servicer, and as stated above, she had no choice in selecting them as such. She had to
rely on their calculations and decisions regarding her eligibility for loan modifications and had no
other option. Wells Fargo argues that Plaintiff failed to show that they benefitted in some way
from their erroneous denial but ignores the obvious fact that Wells Fargo used the erroneous

calculation to justify a foreclosure against Ms. Williams and *take her home*. The statement that they did not benefit by denying her a modification is an insult to injury and plainly false.

In addition, Wells Fargo fails to disclose that it had obligations to foreclose on a timeline dictated by the investors or owners of the loan or face penalties for failing to do so including potentially being forced to buyback the loan, that Wells Fargo was required to pay servicing advances while a foreclosure was pending, and that Wells Fargo was required to advance principal and interest on a mortgage loan while the loan was in default. All of these obligations come to an end when a loan is foreclosed and the property becomes REO property of the bank. Wells Fargo may recover its advances when there is a foreclosure. Recovery of advances is forestalled when there is a loan modification. These perverse financial incentives are adequate reasons for Wells Fargo to take its actions.

Further, their argument that the ICFA claim fails because the Plaintiff did not say the words "intent" or "rely" in the Complaint is a weak argument that fails to cite any case law that imposes such a stringent standard on linguistics to meet the ICFA requirements. In fact, this argument arises from a hypertechnical reading of the Complaint that does not comport with Rule 8. "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era…" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950, 556 U.S. 662, 678 (U.S. 2009). Wells Fargo appears to have missed the memo disfavoring hypertechnicality.  The Complaint clearly expresses that the reliance Ms. Williams had on Wells Fargo to handle her mortgage servicing correctly and in compliance with federal regulation is enough to state an ICFA claim and should not be the basis of granting Wells Fargo's Motion to Dismiss.

### C. Wells Fargo's conduct was the proximate cause of Ms. Williams' harm.

Proximate cause in an ICFA case "is typically an issue of fact" unless "only one conclusion is clearly evident." *Izumi Saika v. Ocwen Loan Servicing, LLC,* 357 F. Supp. 3d 704, 718 (N.D. Ill. 2018) (internal citations omitted).

Here, Wells Fargo argues that the Complaint fails to state that Ms. Williams would have been able to avoid foreclosure absent their misconduct based on a properly calculated loan modification but ignore ¶¶ 115-116 of the Complaint. Those paragraphs show that Ms. Williams was able to rent and repair a house that significantly increased her monthly housing obligations over a modified mortgage on her loan serviced by Wells Fargo had her mortgage modification been calculated correctly.

Further, courts have held that there remains proximate cause under ICFA where improper conduct results in a consumer having limited options for recourse. See *Wigod*, 673 F.3d at 575 (finding a plausible causal relationship under the ICFA where the loan servicer's improper conduct during the modification process resulted in the homeowner having more limited options to save her home). It does not matter that Ms. Williams denied a modification that required her to terminate her FHA insurance because that was a limited, adverse option that Wells Fargo subsequently withdrew while they continued to deny other updated and complete loan modification applications, including applications for short sales. (Complaint at ¶¶ 6-8).

As stated in the Complaint, for more than two years before Ms. Williams lost her home at the foreclosure sale, Wells Fargo had identified and was fully aware of three calculation errors resulting in Wells Fargo's wrongful denials of loan modifications. *Id*. at ¶ 10. These calculation errors caused Wells Fargo to wrongly deny Ms. Williams for all loss mitigation programs from 2011 through 2018. But fore Wells Fargo's knowing and maliciously refusal to  take the first step

to stop the foreclosure sale, review, and re-review Andrea's applications, correct its errors, and offer Ms. Williams a viable loan modification, she would not have lost her home, file for bankruptcy, have her credit destroyed, or have suffered the emotional distress that hospitalized her and put her out of work in 2017.

Wells Fargo argues that Ms. Williams had a "staggering" amount of debt that she could not have paid other than her mortgage debt to Wells Fargo. This is simply untrue. The vast majority of Ms. Williams' non-mortgage debt was student loan debt. Factually, there is no way the Court could grant the motion based on the interjection of this issue into a Motion to Dismiss because it is factually driven. The standard of review requires the Court to accept the complaint's factual material as true and construe it in a light most favorable to Ms. Williams. Wells Fargo's interjection of material from Ms. Williams' bankruptcy filing out of context is not "factual material in the complaint" and will not support Wells Fargo's argument when discovery is complete. Thus, this Court should disregard this argument for the purposes of this motion.

Just for the Court's edification, this argument about the amount of Ms. Williams' debt is a repeat performance of an argument urged by Wells Fargo in the case of *Garcia v. Wells Fargo* that went to trial with Judge Pallmeyer in June of 2023. That case settled during the third day of trial. At trial (and in other motions) Wells Fargo argued that the bankruptcy papers indicated that the Garcias could not have afforded the modified loan because of other debts and that their post-bankruptcy housing costs were less than the modified mortgage would have been. However, Wells Fargo does not have the second prong of that argument in this case as Ms. Williams' housing costs increased substantially after the foreclosure. Wells Fargo's now attempts to invoke the first half of that playbook here. Again, discovery will demonstrate that Ms. Williams' non-mortgage debts are

predominantly student loans and that she could have easily afforded the modified mortgage that would have been several hundred dollars less per month than she paid in rent.

### III.   The ICFA claim is timely.

The statute of limitations for a violation of ICFA is three years. 815 ILCS § 505/10a(e). "Generally, in tort, a cause of action accrues and the limitations period begins to run when facts exist that authorize one party to maintain an action against another." *Fleischer v. Accesslex Inst.,* 2019 U.S. Dist. LEXIS 144661, at 16 (N.D. Ill. Aug. 26, 2019) (internal citations omitted). "The discovery rule delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused. The time at which a party has or should have the requisite knowledge under the discovery rule to maintain a cause of action is ordinarily a question of fact." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 630-31 (1994).

Accepting the well pled facts as true, the Complaint alleges that for years Wells Fargo knowingly engaged in unfair practices while deceptively maintaining a position that Ms. Williams account was not impacted by the HPA tool. Wells Fargo further maintained its position that Ms. Williams loan was "serviced accurately and the foreclosure is valid." (Complaint at ¶13). The fact that Wells Fargo admitted to having a prior calculation issue is not an admission that Ms. Williams has a valid cause of action or that the calculation error caused Ms. Williams to lose her home. Wells Fargo does not even allege that the escrow error mentioned was related to the actual cause of Wells Fargo continuing foreclosure.

Ms. Williams having issues with her mortgage modification requests being denied, standing alone or even in concert with these other issues, does not automatically mean that Ms. Williams knew or should have known that Wells Fargo was engaged in serial unfair business

16

practices. The Complaint alleges that Wells Fargo concealed the magnitude of its wrongdoings from Ms. Williams including through affirmative statements that there was no wrongdoing, see ¶¶ 120-139. Ms. Williams has plausibly alleged that she did not become aware that she may have an actionable claim until Wells Fargo mailed her the August 9, 2023 letter stating, "[D]uring a review of the account, we identified that when the loan was considered for payment assistance options it may have been improperly denied....We apologize for any inconvenience this caused[ ]" along with a check for $45,000. *Id.* at ¶13. It is the August 9, 2023, letter with the accompanying payment that triggered inquiry notice to Andrea Williams that the ICFA claim is premised upon. Accepting these facts as true for purposes of this motion, Wells Fargo's argument must be rejected.

### IV.        Granting a Motion to Strike is improper.

Motions to strike pursuant to Rule 12(f) are generally disfavored. *Geary v. Maryville Acad.*, 2012 U.S. Dist. LEXIS 82850, at 3-4 (N.D. Ill. June 12, 2012). (citing *Riemer v. Chase Bank, N.A.*, 275 F.R.D. 492, 494 (N.D. Ill. 2011) (holding that Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'"). Further, "The party moving to strike has the burden of showing that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." *Id.* (internal citations omitted.). Granting a Motion to Strike is improper in this instance because as explained in the Complaint and herein, the facts the Motion to Stike is attempting to get rid of are facts that go directly towards showing Wells Fargo's conduct offends public policy, and that they engaged in conduct that was harmful to consumers. Wells Fargo does not provide any tenable argument showing the Court that the facts in the Complaint are so unrelated to the allegations that they should be stricken. Instead, their motion is predicated upon Wells Fargo's argument that the

allegations are time barred, but if the Complaint is viewed in the light most favorable to the

Plaintiff, then that argument fails and their Motion to Stike should be denied.

## **CONCLUSION**

Wells Fargo has wholly failed to demonstrate that this Complaint should be dismissed or

stricken. Wells Fargo's motion should be denied in its entirety.


Dated: May 30, 2024                                    *Respectfully submitted,*

                                                       Andrea D. Williams

                                                       */s/ Nick Wooten*
                                                       Nick Wooten
                                                       Sabine S. Wakim
                                                       DJC LAW, PLLC
                                                       1012 West Anderson Lane
                                                       Austin, Texas 78757
                                                       (512) 220-1800

                                                       nick@teamjustice.com
                                                       swakim@teamjustice.com

                                                       *Counsel for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 30, 2024, a true and correct copy of the foregoing OPPOSITON

TO DEFENDANT'S COMBINED MOTION TO DISMISS AND MOTION TO STRIKE was

filed via the Court's CM/ECF system, which will serve a copy on all counsel of record.


<u>/s/ Nick Wooten</u>
Nick Wooten