# EXHIBIT 1

1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                         NORTHERN DISTRICT OF ILLINOIS
 2                             EASTERN DIVISION

 3   ANDREA D. WILLIAMS                 )
                                        )     Case No. 24 C 2241
 4                  Plaintiff,          )
                                        )
 5         v.                           )
                                        )
 6   WELLS FARGO BANK, N.A.,            )     Chicago, Illinois
                                        )     August 12, 2024
 7                  Defendant.          )     9:22 a.m.

 8        TRANSCRIPT OF PROCEEDINGS - In-court Status Hearing
                 BEFORE THE HONORABLE THOMAS M. DURKIN
 9
     APPEARANCES:
10
     For the Plaintiff:      DJC LAW, PLLC
11                           BY:  MR. NICK HEATH WOOTEN
                                  MS. SABINE S. WAKIM
12                           1012 West Anderson Lane
                             Austin, Texas 78757
13
     For the Defendant:      WINSTON & STRAWN LLP
14                           BY:  MR. SCOTT AHMAD
                             35 West Wacker Drive
15                           Chicago, Illinois 60601-9703

16                           WINSTON & STRAWN LLP
                             BY:  MS. CARRIE HARDMAN
17                                MS. ANGELA SMEDLEY
                             200 Park Avenue
18                           New York, New York 10166-4193

19   Also present:           MR. ALEX MOGLIA (Bankruptcy Trustee)

20   Court Reporter:         ELIA E. CARRIÓN, CSR, RPR, CRR, CRC
                             Official Court Reporter
21                           United States District Court
                             219 South Dearborn Street, Room 1432
22                           Chicago, Illinois 60604
                             312.408.7782
23                           Elia_Carrion@ilnd.uscourts.gov

24                        *   *   *   *   *
                  PROCEEDINGS REPORTED BY STENOTYPE
25      TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION
```

1      (Proceedings heard in open court:)

2              THE CLERK:  The next case is 24 CV 2241, Williams v.

3      Wells Fargo Bank.

4              May I please ask the attorney present on behalf of

5      the plaintiff to state their name.

6              MR. WOOTEN:  Good morning, Your Honor.  Nick Wooten.

7      Good to see you.  I think we may need more than 10 minutes, so

8      if you wanted to take the 9:30, we would -- I don't think I

9      would have a problem with waiting.

10             THE COURT:  Well, let's start, and at 9:30 we'll

11     interrupt and -- that'll be -- the 9:30 one is very brief,

12     it's on the phone, and then we'll pick up where we left off.

13             All right.  So Mr. Wooten, and who else?

14             MR. WOOTEN:  Your Honor, I have Sabine Wakim.  She's

15     my associate.

16             THE COURT:  All right.

17             MR. WOOTEN:  Brought her up to meet you and make an

18     appearance in federal court.  She's -- she's been working

19     about four months with me in litigation, so...

20             THE COURT:  All right.  Good morning.

21             MS. WAKIM:  Good morning, Your Honor.

22             THE COURT:  Okay.

23             MR. AHMAD:  Good morning, Your Honor.  Scott Ahmad

24     from Winston & Strawn on behalf of Wells Fargo.  I have with

25     me my partner Carrie Hardman who's our bankruptcy specialist

1   in case any issues relating to that come up.  And

2   Angela Smedley is also with me.

3           THE COURT:  All right.  Good morning.

4           And do we have the trustee on the phone?

5           MR. MOGLIA:  Good morning, Your Honor.  Alex Moglia,

6   bankruptcy trustee.

7           THE COURT:  All right.  Good morning.

8           And, Mr. Moglia, I understood you were going to be on

9   the phone.  No problem at all.  I do most things over the

10  phone, as you may have noticed from the previous call, but

11  there's a request to do this in court, which is fine.

12          Okay.  We have -- this is your first appearance in

13  front of me.  I received a joint status report from the

14  parties.  And this case went to Judge Kocoras, then went to

15  Judge Hunt, and then it came to me.  And so I've got it.  And

16  Judge Hunt was a former bankruptcy judge so it's likely that

17  she either touched the case or knows -- perhaps knows the

18  trustee.  Judge Kocoras is a senior judge, and he had the

19  prerogative, if he wished, to reassign the case.  So do I as a

20  senior judge, but you've been through enough judges, so I'll

21  keep it.

22          Okay.  The issue I wanted to raise and why I asked

23  Mr. Moglia to be on -- on the phone is the question of whether

24  or not Andrea Williams is the proper party in this case.

25  There's a -- there's an argument made that -- not an argument,

Case 18-16866   Doc 39-3   Filed 09/17/24   Entered 09/18/24 00:00:06   Desc Exhibit
1   Page 5 of 21
Case 1:24-cv-02241 Document #: 46 Filed: 08/22/24 Page 4 of 20 PageID #:314

4

1   but there's an objection made by defense saying that given the

2   fact that the lawsuit -- the misconduct -- the supposed --

3   alleged misconduct in this case occurred prior to her filing

4   bankruptcy, the claims that arise from it belong to the

5   bankruptcy estate; and if they belong to the bankruptcy

6   estate, the proper party is the bankruptcy trustee, unless he

7   abandons the claim.

8           Mr. Moglia, maybe you can address this.  I don't

9   understand why you're not the plaintiff, as opposed to

10   Ms. Williams.

11           MR. MOGLIA:  Yes.  Good morning, Your Honor.

12           THE COURT:  Good morning.

13           MR. MOGLIA:  To the best of my recollection, when

14   Mr. Wooten's office -- or Mr. Wooten contacted my office, at

15   that time, the bankruptcy case had been closed because

16   years ago I found at that time that there would be no readily

17   identifiable assets to liquidate for the benefit of the

18   bankruptcy case's creditors.  The case closed years later.

19   Mr. Wooten contacted me.

20           At that time, when he was contemplating filing this

21   suit on behalf of Ms. Williams, I did not exist as the trustee

22   in the case because the bankruptcy case itself had been

23   closed.  So what I said to him is that I could not force him

24   to do one thing or another.  They could do whatever they

25   thought was best on behalf of Ms. Williams, but that I could

5

1   not be the plaintiff because I had been discharged as

2   bankruptcy trustee.

3            So as -- as I recall, then the -- the case was filed.

4   Eventually, the U.S. trustee reopened the case at my request

5   and reappointed me trustee and -- which is my current status

6   now.  So I believe that's the -- that's my -- serving my

7   recollection.  Mr. Wooten can correct me, if he wishes, and

8   that's all I can say on the subject for -- for this moment.

9            THE COURT:  Okay.  Well, you are the -- the -- you

10  are the trustee now in this case, correct?

11           MR. MOGLIA:  Yes, sir.  Yes, sir.

12           THE COURT:  All right.

13           MR. MOGLIA:  And -- forgive me; I interrupted you.

14  Please.

15           THE COURT:  So my -- and that happens on the phone

16  all the time because neither one of us knows who's speaking,

17  so it's not your fault.

18           Who -- is there any reason you can't substitute in as

19  plaintiff?

20           MR. MOGLIA:  I don't know that.  I will consult my

21  bankruptcy counsel, as well as special counsel, Mr. Wooten's

22  office.  I -- I personally don't see a reason why I cannot

23  substitute.  But, again, although I'm a lawyer, I don't

24  practice law, and I defer to my -- my counsel for advice.

25           In this circumstance, when a trustee is appointed in

Case 18-16866   Doc 39-3   Filed 09/17/24   Entered 09/18/24 00:00:06   Desc Exhibit
1   Page 7 of 21
Case 1:24-cv-02241 Document #: 46 Filed: 08/22/24 Page 6 of 20 PageID #:316

6

1   a Chapter 7 bankruptcy, often preexisting personal injury or

2   other court-type actions exist and the trustee simply hires

3   the plaintiff's lawyer as special counsel, and then the case

4   continues in the name of the -- in this case, Ms. Williams,

5   but it is an asset of the bankruptcy estate.  So normally I

6   don't substitute in as a plaintiff.

7          THE COURT:  Well, I --

8          MR. MOGLIA:  But I defer to the Court as -- as what

9   it wishes me to do, and also consulting with counsel.

10          THE COURT:  All right.  I mean, certainly you're free

11   to hire counsel to represent you in pursuing the case, which

12   presumably is going to be Mr. Wooten and his colleagues,

13   but --

14          MR. MOGLIA:  That is correct, Your Honor.

15          THE COURT:  -- but the question of whether it's

16   properly titled and being brought by Ms. Williams or brought

17   by the trustee, I think -- and I'll hear from Mr. Wooten, then

18   I'll hear from Mr. Ahmad -- I think Ms. Williams can only

19   bring the case in her own name if the trustee has abandoned

20   the claim.

21          So I'll hear from Mr. Wooten.  Actually, we're almost

22   at 9:30.  I'll give him a minute to be in a position to

23   respond to my question, and we'll call the case at 9:30 and

24   then -- it'll just take about a minute, and then we'll resume

25   this right where we left.

7

1          MR. WOOTEN:  And, Your Honor, do you need anything

2    else from Mr. Moglia?  You want him to wait until we come back

3    or --

4          THE COURT:  It's a minute.  I'd prefer he stay on the

5    line.

6          MR. WOOTEN:  Okay.

7      (Pause in the proceedings.)

8          THE COURT:  Re-calling Williams v. Wells Fargo.

9          MR. AHMAD:  Your Honor, because this is a bankruptcy

10   issue, I'm going to swap out with --

11         THE COURT:  Sure.

12         MR. AHMAD:  -- Ms. Hardman, if that's okay,

13   Your Honor.  And she's admitted *pro hac* in this case.

14         MS. HARDMAN:  Thank you, Your Honor.

15         THE COURT:  Good morning, Ms. Hardman.

16         MS. HARDMAN:  Good morning.

17         THE COURT:  Okay.  Let's hear first from Mr. Wooten.

18         MR. WOOTEN:  All right.  Your Honor, just -- just

19   take a little bit more time than normal just because this is a

20   little bit more convoluted than some of the issues we

21   addressed.  So just to get clear with the Court on the

22   timeline with Mr. Moglia, we contacted him prior to filing

23   suit, as he indicated.  We discussed whether to bring the suit

24   in his name or not.  He did indicate that we had to go through

25   the process of reopening the bankruptcy estate.  The Chapter 7

Case 18-16866   Doc 39-3   Filed 09/17/24   Entered 09/18/24 00:00:06   Desc Exhibit
1   Page 9 of 21
Case 1:24-cv-02241 Document #: 46 Filed: 08/22/24 Page 8 of 20 PageID #:318

8

1  trustee would appoint a panel trustee, which at that time he

2  wasn't even sure he would be reappointed, but then, you know,

3  obviously, you go through the normal process of application

4  for employment being hired as special counsel.  All that's

5  already occurred.  That all was completed in the month of May.

6          After the motion to dismiss was filed, we brought up

7  the issue of -- of whether or not we should add him as

8  additional plaintiff or substitute plaintiff.  And at that

9  point in time, after the motion was filed, my understanding

10  was my instructions were to continue the case in Ms. Williams'

11  name.  Because Ms. Williams is cooperating, she has an

12  interest in the surplus of the case, and my understanding at

13  that time was that we -- the consensus was everybody felt that

14  it would be a better presentation in evidence and cleaner for

15  him to just maintain control of the litigation, because he's

16  entitled to the first fruits of the case up to all the claims

17  in bankruptcy, plus all of his costs administration, plus his

18  commission, but then any amounts over that go on to

19  Ms. Williams in -- in a surplus.

20          And so we're in a -- a unique situation in bankruptcy

21  law, as you're well aware.  There aren't many times where a

22  debtor comes into a bankruptcy case and they had the potential

23  for a surplus recovery.  But in those rare instances, their

24  rights are protected.  So Ms. Williams fully disclosed and

25  understands the trustee's role that -- that he has the first

1   fruits; he gets the first dollars until the creditors are

2   paid; and she understands that whatever's left is hers.

3          And so it's been a cooperative, collaborative,

4   conflict-free agreement about how the case would proceed.  And

5   we did not see a need to substitute in Mr. Moglia as

6   bankruptcy trustee because he is controlling the litigation

7   and he has discretion, just like anyone else pursuing a tort

8   claim, as to how to pursue and what he believes is in his best

9   interest just to how to get the maximum recovery -- maximum

10  net recovery for the estate and the creditors.

11         And he also knows that he can't squander any

12  potential surplus that Ms. Williams has by short-settling the

13  case or anything like that, nor would he.  You know, so we're

14  looking at a case that we see as a seven-figure recovery for

15  the client, and right now, the estate -- claims date has

16  passed, the bar date, and there is about $191,000 of student

17  loans which are not in default.  There's an administrative

18  claim made for those amounts, and then there's about less than

19  $10,000, $15,000 in credit card claims that are prebankruptcy.

20  So there's not much by way of claims.  And, you know,

21  eventually that money will be paid out.

22         So the only question's whether the student loan

23  servicer will keep their claim in the bankruptcy or whether

24  they'll withdraw their claim.  And I have not resolved because

25  that it's a new student loan servicer and they have our

Case 18-16866   Doc 39-3   Filed 09/17/24   Entered 09/18/24 00:00:06   Desc Exhibit
1   Page 11 of 21
Case: 1:24-cv-02241 Document #: 46 Filed: 08/22/24 Page 10 of 20 PageID #:320

10

1   accounts.  So once we know that, we'll know whether we're

2   dealing with roughly $200,000 in claims or whether we're

3   dealing with 15,000 in claims.

4           THE COURT:  All right.  And from Wells Fargo.

5           MS. HARDMAN:  Your Honor, Carrie Hardman from Winston

6   & Strawn on behalf of Wells Fargo.  Thank you for hearing me

7   today, Your Honor.

8           I have to admit I am -- I am an Article I folk, so I

9   will stay in my lane and just talk bankruptcy to Your Honor,

10  if you don't mind.

11          THE COURT:  Sure.

12          MS. HARDMAN:  So if you have any questions with

13  respect to Article III issues, Mr. Ahmad will help with that.

14          With respect to the issues, this is the first time

15  that we're understanding sort of the facts that have been laid

16  out from counsel to the plaintiff about the dates and times,

17  and it's been helpful to understand from the trustee what he

18  understood to be the case here in terms of how things played

19  out right before the bankruptcy was reopened.

20          What I will say about that is counsel to the

21  plaintiff just mentioned that Mr. Moglia did advise counsel to

22  reopen the case and they opted to instead file the matter in

23  Ms. Williams' name instead of reopening the case.  They did

24  one before the other there.  And -- and from our perspective,

25  on the bankruptcy side of things, the -- the proper purpose or

1    the proper status is to reopen the case first.  This is an

2    estate claim whether the case is open or not.  And -- and by

3    the case, I mean the bankruptcy case.

4              So from our perspective, I was also going to mention

5    that the complaint references the bankruptcy case, so there's

6    knowledge there that this was sort of the next steps in the

7    procedure here.  I'm not trying to be impractical, Your Honor.

8    We just want to make sure we have the right plaintiff in the

9    matter.

10             I understand that counsel's referenced that there

11   is -- they're all working together in the same direction and

12   that is great.  I think what we've raised some concerns with

13   the Bankruptcy Court, which I understand is not an issue

14   before Your Honor today, but I just think for the record it's

15   important to note that it seems that even today is an example

16   of a circumstance where maybe Ms. Williams and the trustee

17   don't row in the exact same direction, and that's a concern we

18   have that we're going to address with the Bankruptcy Court as

19   to having the same counsel serve for both.

20             I say that to say, my understanding is that

21   Mr. Moglia is the proper plaintiff here.  We can easily

22   resolve this.  I would think through an amendment of the

23   complaint to address the standing issue alone, I -- I reserve

24   all rights with respect to all other claims and the actual

25   underlying merits.  But when we talk about the standing issue

Case 18-16866  Doc 39-3  Filed 09/17/24  Entered 09/18/24 00:00:06  Desc Exhibit 1  Page 13 of 21
Case: 1:24-cv-02241 Document #: 46 Filed: 08/22/24 Page 12 of 20 PageID #:322

12

1   here, Your Honor, this is something that we probably didn't

2   even need to brief and could've addressed rather easily

3   through an amendment for the new plaintiff.

4           But if Mr. Moglia's being advised to just have

5   Ms. Williams proceed, that leads to confusion from the bank's

6   perspective.  We don't know who to negotiate with; we don't

7   know which party is the one to actually have those discussions

8   with.  From my perspective as a bankruptcy folk, it's the

9   trustee.  And I understand that the plaintiff's position is

10  that they believe they're entitled to a surplus, but that's

11  simply not the law under the bankruptcy code.

12          The trustee has the sole and exclusive authority,

13  unless or until, as Your Honor mentioned, he chooses to

14  abandon the claim or has pursued it and liquidated it to his

15  best abilities.  I understand he has to weigh and consider all

16  of the constituents that he serves.  And he serves the

17  creditors.  He doesn't serve the underlying debtor.  I want

18  for her to have whatever recovery she's entitled to, if any,

19  but that's not the issue before Your Honor.  The issue is

20  who's the proper party, and it is the trustee here,

21  Your Honor.

22          THE COURT:  All right.  Well, Mr. Moglia, anything

23  you want to add?

24          MR. MOGLIA:  Your Honor, I served as a bankruptcy

25  trustee for 35 years in this district and others.  It is

Case 18-16866    Doc 39-3    Filed 09/17/24    Entered 09/18/24 00:00:06    Desc Exhibit
1    Page 14 of 21
Case: 1:24-cv-02241 Document #: 46 Filed: 08/22/24 Page 13 of 20 PageID #:323

13

1  customary for a trustee to pursue and control litigation that

2  is preexisting to the appointment of the trustee without

3  having to substitute in.  I control the litigation.  So the

4  fact that the plaintiff is Ms. Williams, from a practical

5  standpoint, from the trustee's standpoint is irrelevant.

6         THE COURT:  What's the -- what's the harm in

7  substituting the trustee as the plaintiff?  I don't see how

8  the -- Ms. Williams is prejudiced, given Mr. Wooten's

9  statements that she's cooperating with the trustee and the

10  trustee has asked Mr. Wooten to pursue the claims.  I don't

11  understand why what I view as the proper party, the trustee,

12  can't -- you can't make an oral motion to substitute him right

13  now.  He becomes the named plaintiff and we proceed with the

14  litigation.

15         MR. WOOTEN:  Your Honor, my -- my only point on that

16  is, is that if this were a case where there were no

17  possibility of sur- -- surplus, then we wouldn't be having the

18  discussion.  We would have -- you know, we wouldn't have

19  even -- we wouldn't have even have filed the case when we did.

20  But we -- you know, we have a history; we know what these

21  cases are worth; we understand where the valuations are at;

22  and we're certain, from our perspective, that it's a case with

23  a surplus.  And surplus cases are treated differently.  The --

24  the -- the debtor's rights are not terminated and she does

25  retain standing to protect her interests in, you know, the

1    surplus.

2         Again, there's no conflict.  My point is that we

3    could -- and if there's -- if the Court feels like just from a

4    comfort perspective that it makes the Court feel more certain

5    about it, my suggestion would be we -- we amend to add

6    Mr. Moglia as trustee for the estate as an additional

7    plaintiff rather than completely removing Ms. Williams from

8    the pleadings, because I -- I don't think that's necessary.

9         And in the *Garcia* case, we had the same issue come

10   up.  Judge Pallmeyer essentially ordered the trustee to be

11   substituted, and then within a month, we had -- the claims

12   were paid out and the trustee closed the estate, so it

13   essentially was an argument in semantics.  And that may very

14   well happen here.

15        I mean, if -- if the student loan servicer withdraws

16   her claims after we talk with them, then, you know, the claims

17   that are left will probably be paid and -- and Mr. Moglia's

18   work would be done on behalf of the creditors.  And I think he

19   would confirm with you that beyond what it takes to pay the

20   creditors and his admi- -- costs administration and

21   compensation, he -- he doesn't have any interest in any

22   dollars beyond that, and he would want to be out as soon as

23   that occurred.

24        THE COURT:  All right.

25        MS. HARDMAN:  Your Honor?

1          THE COURT:  Go ahead.

2          MS. HARDMAN:  I apologize.

3          THE COURT:  Yeah.

4          MS. HARDMAN:  Plaintiff's position of refusing to

5    accept this possibility of -- of substituting the plaintiff

6    underscores my concern about the conflict.  I'm not sure who

7    that helps.  If that's helping the trustee in some manner, I

8    just don't see it.  I don't know why the trustee would have

9    any difference of a -- of a situation here if he were just

10   substituted.  So I just -- that -- this raises my concern

11   about the conflict which, Your Honor, we're not going to put

12   before you, but we're putting before the Bankruptcy Court, of

13   I don't know why we're taking such a strong position; why we

14   have to continue to expend time and money to litigate this

15   issue when I don't understand who it benefits.  The trustee is

16   supposed to be the primary beneficiary right now.

17         THE COURT:  Well, Mr. Wooten, you can either orally

18   move to have Mr. Moglia come in, a trustee, as plaintiff;

19   Ms. Williams no longer be the plaintiff.  Her claims will be

20   pursued by Mr. Moglia.  Or I have a six-page draft opinion

21   here dismissing the case.  So it's your choice.

22         MR. WOOTEN:  So moved, Your Honor.

23         THE COURT:  So moved.  The motion's granted.  The

24   trustee will be the plaintiff in the case.  There's no need

25   to -- unless it's going to clean things up for the Bankruptcy

Case 18-16866   Doc 39-3   Filed 09/17/24   Entered 09/18/24 00:00:06   Desc Exhibit
1   Page 17 of 21
Case: 1:24-cv-02241 Document #: 46 Filed: 08/22/24 Page 16 of 20 PageID #:326

16

1   Court, there's no need to amend the complaint.  If you think

2   that's going to be cleaner so there's no confusion of the

3   Bankruptcy Court, you can just make that amendment.  Why don't

4   you do that.  Maybe that's the simplest thing to do.

5           MR. WOOTEN:  I -- we can do that today, Your Honor.

6           THE COURT:  Fine.

7           MR. WOOTEN:  We're in Chicago for two days.  We'll

8   get it handled this afternoon.

9           THE COURT:  You've got a week, so -- but that will I

10  think clear up any confusion.  Ms. Williams is not prejudiced

11  in any way.

12          By the way, how old is she?

13          MR. WOOTEN:  Ms. Williams is around my age,

14  Your Honor; early to mid-50s.

15          THE COURT:  Okay.  All right.  And I see there were

16  some attempts at settling, but that's not in the cards at this

17  point.  Maybe, Mr. Ahmad, that's your bailiwick.

18          Thank you, Ms. Hardman.

19          MS. HARDMAN:  Thank you, Your Honor.

20          THE COURT:  Okay.  Go ahead.

21          MR. AHMAD:  Yes, there -- there was an initial demand

22  made by -- by email.  We didn't view that as -- as -- as one

23  that merited a response at this point, Your Honor.  And that's

24  it on settlement for now, Your Honor.

25          THE COURT:  All right.  That's fine.

1    All right.  There's also -- that deals with the

2  standing issue, which was the basis of the motion to dismiss.

3  You have other issues you've raised; whether it's time-barred,

4  whether there's enough facts alleged to support the elements

5  of an ICFA claim.  I'm not going to stay discovery while that

6  goes on.  Typically, we don't stay discovery.  I would on a

7  standing issue because that is a threshold issue, but I'm not

8  going to stay it on these other issues.

9    You have disagreements on the type of discovery --

10 what discovery ought to be done.  I'm going to refer the

11 matter to Judge Weisman, who's the magistrate judge, to set

12 deadlines and administer all discovery issues in the case.

13 You'll appear back in front of me, unless it's on -- we'll --

14 we'll rule on the remaining motion to dismiss, but the

15 discovery issues will go to Judge Weisman, and if he -- he'll

16 resolve any differences you have on that.

17    So, Mr. Wooten, anything else?

18    MR. WOOTEN:  Your Honor, I think the only other

19 issue, just maybe you can help us with some guidance is we

20 were proposing pushing for a trial date around May, and I

21 think their position was October.  I don't know where your

22 schedule's at or if you have a strong feeling either way.

23    THE COURT:  October 2024?

24    MR. AHMAD:  '25, Your Honor.

25    THE COURT:  I don't know what my schedules's at

18

1   either.

2            MR. WOOTEN:   Okay.

3            THE COURT:   So the -- I need to see what -- once you

4   get a schedule that's been set before Judge Weisman, if you

5   want to find a written -- file a written status report with

6   me, once that schedule's been set for discovery, I'll bake

7   into it what is the Pavlovian response of filing a summary

8   judgment motion in every case by defense, no offense, but it

9   happens.

10           MR. AHMAD:   None taken, Your Honor.

11           THE COURT:   And that -- that requires briefing and

12  time for us to rule.  And I don't like to rule -- set a trial

13  date and have it hanging over your head while you're preparing

14  for trial when it may not happen if I grant summary judgment.

15  So I'm not going to set a trial date at this time, but you're

16  free to come in and file a written status report once Judge

17  Weisman has a discovery schedule set, and then give your

18  proposed dates.  And if I think either one's doable, I'll set

19  it for a date so you all have something to shoot for.

20           And -- anything else, Mr. Wooten?

21           MR. WOOTEN:   I don't think so, Your Honor.

22           THE COURT:   Mr. Ahmad?

23           MR. AHMAD:   I had just a couple quick technical

24  things.

25           THE COURT:   Go ahead.

1          MR. AHMAD:  So, yes, we will meet and confer with

2     Mr. Wooten on dates and get those scheduled with the

3     magistrate.  Understood.

4          Just so I understand the formality of everything.  So

5     the -- the trustee will be appointed, right?  We -- we don't

6     have to file a renewed motion to dismiss like in 14 days.  We

7     shouldn't consider an amended complaint and then file --

8          THE COURT:  No.  I'm orally saying that the current

9     motion --

10          MR. AHMAD:  Okay.

11          THE COURT:  -- to dismiss and the briefing on it

12     applies equally to -- as it did to Ms. Williams, it applies to

13     the trustee.

14          MR. AHMAD:  Perfect.  Thank you, Your Honor.

15          And then in terms of setting a next status date,

16     there is a -- a hearing that's going to be before the

17     Bankruptcy Court -- or a status date with the Bankruptcy Court

18     on or around September 10th that's going to address some of

19     the issues of conflict and -- and representations and --

20     and -- and things of that nature, so perhaps it would, humbly,

21     make sense to set the status for shortly after -- shortly

22     after that.

23          THE COURT:  If you think there's something that

24     affects this case --

25          MR. AHMAD:  Okay.

20

1          THE COURT:  I don't understand why it would, but if

2     you think there's something that affects this case, contact my

3     courtroom deputy, we'll do a phone status and address any

4     concerns you have.  But I'm not going to set something in

5     anticipation of a problem that may not exist.

6          MR. AHMAD:  Understood, Your Honor.

7          THE COURT:  Okay.  Mr. Moglia, anything else from

8     your end?

9          MR. MOGLIA:  No, Your Honor.  I'm perfectly happy

10    with the outcome.

11         THE COURT:  Okay.  Thank you for coming on the call.

12         Anything else by anyone?

13         MR. WOOTEN:  No.  That's it.

14         THE COURT:  Thank you all.

15         MR. WOOTEN:  Thanks.

16         MS. WAKIM:  Thank you, Your Honor.

17         MR. MOGLIA:  Thank you, sir.

18      (Concluded at 9:47 a.m.)

19

20                      *   *   *   *   *

21       I certify that the foregoing is a correct transcript

22    from the record of proceedings in the above-entitled matter.

23    */s/ Elia E. Carrión*          *22nd day of August, 2024*

24    Elia E. Carrión                          Date
      Official Court Reporter
25