# EXHIBIT D

Transcript of Proceedings, Moglia v. Wells Fargo Bank, N.A., No. 24 C 2241 (N.D. Ill.), Hearing of April 3, 2025

*In re Andrea D. Williams, Case No. 18-16866 (Bankr. N.D. Ill.)*

TRANSCRIBED FROM DIGITAL RECORDING

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALEX D. MOGLIA,                                )
                                               ) Case No. 24 C 2241
          Plaintiff,                           )
                                               )
          vs.                                  )
                                               )
WELLS FARGO BANK, N.A.,                         ) Chicago, Illinois
                                               ) April 3, 2025
          Defendant.                           ) 3:43 P.M.

          TRANSCRIPT OF PROCEEDINGS - Telephonic Status
     BEFORE THE HONORABLE M. DAVID WEISMAN, Magistrate Judge

APPEARANCES:

For the Plaintiff:          CHEELEY LAW GROUP LLC
                            2500 Old Milton Parkway
                            Suite 200
                            Alpharetta, Georgia  30009
                            BY:  MR. NICK HEATH WOOTEN

For Intervenor DJC:         DJC LAW
                            1012 West Anderson Lane
                            Austin, Texas 78757
                            BY:  MR. ANDRES CHRISTIAN PEREIRA

For Intervenor Williams:    PAYTON LEGAL GROUP LLC
                            20 North Clark Street
                            Suite 3300
                            Chicago, Illinois  60602
                            BY:  MR. RUSTY A. PAYTON


                    PAMELA S. WARREN, CSR, RPR
                 Official Court Reporter - Retired
                    23869 N. High Ridge Drive
                 Lake Zurich, Illinois   60047
                        312.823.0001

NOTE:  Please notify of correct speaker identification.

Case 18-16866   Doc 141-4   Filed 08/02/26   Entered 08/02/26 14:26:12   Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case   Page 3 of 18

10

MR. PAYTON:  No.

THE COURT:  No, okay.

MR. WOOTEN:  Your Honor, I think I'm -- I mean, other than normal busy schedule, I think I have -- I don't think I have anything taking up whole weeks going on right now.

THE COURT:  Okay.

MR. PEREIRA:  Nor do I, your Honor.

THE COURT:  Give us one minute.  Thank you.

(Brief interruption.)

THE CLERK:  Friday, April 25th.

(Discussion off the record.)

THE COURT:  Okay.  Does April 25 work?

Go ahead.

MR. WOOTEN:  I have --

MR. PEREIRA:  It does for counsel for DJC Law, your Honor.

THE COURT:  Okay.  Mr. Wooten, does it work for you?

MR. WOOTEN:  Your Honor, this is Nick Wooten.  I have a deposition -- I have a deposition that morning that should go until about probably 1:00 o'clock Central Time.  So I could do it that afternoon.

THE COURT:  Mr. Payton, what about you?

MR. PAYTON:  (Unintelligible).

THE COURT:  Okay.  Let's do -- let's do the 25th like 1:00 o'clock.

Case 18-16866   Doc 141-4   Filed 08/02/26   Entered 08/02/26 14:26:12   Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case   Page 4 of 18

11

THE CLERK:  (Unintelligible.)

THE COURT:  2:00.  Okay.  25th at 2:00 o'clock by video.  Ms. Owens will include in the minute order what you need to do to connect her -- or to give her the information to set up the video.

If I could get -- I don't think I need -- I think I have already gotten some stuff on settlement, correct?

I think I saw something from you, Mr. Pereira.

MR. PEREIRA:  Your Honor, this is Andres Pereira, DJC's counsel.  I have submitted a position statement that's laid out --

THE COURT:  Yeah.

MR. PEREIRA:  -- our legal and factual basis for our claim for attorneys's fees.  So I would kind of like to see something from Mr. Wooten with regards to his position.

THE COURT:  All right.  Mr. Wooten, when can you send something over to the Court and then to Mr. Payton and Mr. Pereira?

MR. WOOTEN:  Ummm --

THE COURT:  How about April 8 -- April 17.  April 18 is Good Friday.

MR. WOOTEN:  So the 17th would be fine, your Honor.  I was trying to (unintelligible) calculate my workload for next week because I (unintelligible) conference most of this week.  I don't -- I (unintelligible) little extra.  So the 17th would

Case 18-16866   Doc 141-4   Filed 08/02/26   Entered 08/02/26 14:26:12   Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case   Page 5 of 18

12

give me --

THE COURT:  Perfect.

MR. WOOTEN:  -- adequate time to --

THE COURT:  Okay.

MR. WOOTEN:  -- get a full response --

THE COURT:  Perfect.

MR. PAYTON:  Your Honor, if I could just interject one moment --

THE COURT:  Sure.

MR. PAYTON:  -- with respect to Mr. Pereira's position.  I think it would help us a lot to kind of understand is it his position that he is -- he wants the quantum meruit fees but (unintelligible) her the (unintelligible) that here is the dollars I want for that and give me (unintelligible) for whatever is awarded or is it I did -- I did, you know, 80 percent of the work on the case and therefore I'm entitled to 80 percent of the (unintelligible) fees?  Those are two different kind of animals to tackle and that could (unintelligible) talk about the same thing if we can --

THE COURT:  Yes.

MR. PAYTON:  -- (unintelligible) from his position statement.

THE COURT:  So as I recall, the statement, I think, was more of the former and not the latter.

But Mr. Pereira, what's your view on your quantum

Case 18-16866 Doc 141-4 Filed 08/02/26 Entered 08/02/26 14:26:12 Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case Page 6 of 18

13

meruit position?

MR. PEREIRA: Well, it is what the case law indicates, your Honor. If you look at the Kenilworth case, which is an Illinois case, it says the attorney's skill and standing, the nature of the cause, the time and labor, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the clients. It is not -- it is not just one factor, such as time, you know, times --

THE COURT: Okay.

MR. PEREIRA: -- the rate. It is a compendium of factors.

But I'm not asking for a percentage of a percentage. That's not the appropriate standard. The standard is broader than that. And it includes that, but it is not that all -- all in a -- it is not just that by itself.

THE COURT: All right.

MR. PEREIRA: And, your Honor --

THE COURT: Go ahead.

MR. PEREIRA: -- because this is an issue between me and the trustee, you know, with regards to the fee, I mean, the trustee is the -- is the party that is going to be seeking that fee in the bankruptcy court. I have -- I have indicated to Mr. Payton that we are not seeking a fee over and above what

Case 18-16866  Doc 141-4  Filed 08/02/26  Entered 08/02/26 14:26:12  Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case  Page 7 of 18

14

will be awarded to counsel in the case that was brought in the district court. And so it -- I'm somewhat perplexed as to -- as to whether or not there is any role any longer for Mr. Payton on behalf of Ms. Williams in this case as not seeking anything over and above the amount that will be awarded to counsel, if that makes sense.

THE COURT: Yeah. No, fair point.

So Mr. Payton, go ahead.

MR. PAYTON: Well, certainly I can address that, your Honor. The bulk of the recovery in the case goes to my client as the recipient of the surplus in the bankruptcy case. And of course, you know, what's deducted from that amount affects that bottom line. As the debtor in the bankruptcy, she would certainly have a right to object to any fees that's asserted by either the trustee or DJC. Even though she has -- she signed a -- the estate signed the contingency fee agreement, that agreement is not the determining factor for the bankruptcy court. The bankruptcy court can overlook a fee agreement and award what's reasonable in the case.

So she certainly wants to put her two cents in as to what was reasonable and can be recovered. And in no case does she want a fee asserted that's greater than the contingency fee agreed to.

THE COURT: Yeah. So here's kind of how I see it. I generally understand where Mr. Pereira is coming from

Case 18-16866   Doc 141-4   Filed 08/02/26   Entered 08/02/26 14:26:12   Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case   Page 8 of 18

15

conceptually, just from an accounting standpoint. He's not asking for more than whatever the trustee would be getting. So in a way, you know, it shouldn't conceptually impact Ms. Williams' recovery.

But to your point, Mr. Payton, that's all subject to the bankruptcy court's approval. And so there is no guarantee that you will get that approval. I think everyone expects that, but there is no guarantee. So I could see why there is still some interest of Ms. Williams at play.

As far as the equities of, you know, what Williams thinks which attorney or legal service should get what, that's not really a factor for the Court to consider, whichever court needs to look at it. But because there is a potential, at least, that the bankruptcy court may have a different allocation of how this recovery should be allocated, I don't have any problem with Mr. Payton being there. And I say that -- say this with all due respect to Mr. Payton, I don't think I'm going to spend a lot of time hearing what he has to say, but I certainly, you know, not -- I'm not going to object to having them there, just like I wouldn't object to having Wells Fargo there. I just don't think they have much concern with how this gets resolved.

So I'm -- if there is an objection to having Mr. Payton present, I'm going to overrule that. If there is an insistence that Mr. Payton leads the negotiation, I'm going to

Case 18-16866   Doc 141-4   Filed 08/02/26   Entered 08/02/26 14:26:12   Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case   Page 9 of 18

16

tell Mr. Wooten that that's not going to happen.  He needs to be prepared with the trustee to handle the majority of the negotiations.

Does that seem reasonable to you, Mr. Payton?

MR. PAYTON:  Yes.

THE COURT:  And Mr. Pereira, that seem reasonable to you?

MR. PEREIRA:  Yes, sir.

THE COURT:  And Mr. Wooten, you're more than happy to do a lot of the talking, I take it, correct?

MR. WOOTEN:  Your Honor, you know me too well.

THE COURT:  Okay.  All right.  So we'll get your letter by the 17th.  I may give you all a call before the 25th.

Is there any objection to the Court having ex parte communication with counsel regarding settlement issues in advance of this settlement conference?

Mr. Wooten?

MR. WOOTEN:  There is none, your Honor.

THE COURT:  Thank you.

Mr. Payton, any objection?

MR. PAYTON:  No, your Honor.

THE COURT:  Thank you.

Mr. Pereira, any objection?

MR. PEREIRA:  No, your Honor.

THE COURT:  All right.  Thank you all very much.  I

Case 18-16866   Doc 141-4   Filed 08/02/26   Entered 08/02/26 14:26:12   Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case   Page 10 of 18

17

sincerely look forward to talking with you and getting this thing resolved and put to bed.  So thank you all very much and we will talk later this month.  Thank you.

MR. WOOTEN:  Thank you, your Honor.

MR. PAYTON:  Thank you, your Honor.

MR. PEREIRA:  Thank you, your Honor.

(Which concluded the proceedings.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitation of using a digital-recording system.

/s/Pamela S. Warren                    April 7, 2025
Official Court Reporter - Retired              Date
United States District Court
Northern District of Illinois
Eastern Division

Case 18-16866    Doc 141-4    Filed 08/02/26    Entered 08/02/26 14:26:12    Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case    Page 11 of 18

2

(Proceedings held in open court:)

THE CLERK:  24 C 2241, Williams versus Wells Fargo Bank.

THE COURT:  Good afternoon.  For the trustee.

MR. WOOTEN:  Good afternoon, Judge.  This is Nick Wooten for Mr. Moglia.

THE COURT:  Good afternoon, Mr. Wooten.

For Ms. Williams.

MR. PAYTON:  Good afternoon, your Honor.  Rusty Payton for Ms. Williams.

THE COURT:  Good afternoon.

For Wells Fargo.  Hi, counsel, if you're speaking, you're on mute.  Hi, is there any counsel for Wells Fargo on?

Let's go to DJC Law as the intervenor.

MR. PEREIRA:  Yes, good afternoon, your Honor.  This is Andres Pereira on behalf of DJC Law.

THE COURT:  Good afternoon.

I'll try again.  Wells Fargo, is there counsel on?

All right.  So this case has been re-referred to this Court to have a settlement conference related to the attorney lien being asserted by DJC Law PLLC.  And there appears to be an issue about where any actual litigation about the lien itself would occur, whether in the district court or in the bankruptcy court.  That's how I read the gist of the issue.

Mr. Wooten, do you agree with that?

Case 18-16866   Doc 141-4   Filed 08/02/26   Entered 08/02/26 14:26:12   Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case   Page 12 of 18

3

MR. WOOTEN:  Yes, sir.  Would you want me to elaborate?  I'm willing to.  If you just need a yes or no, then I would agree.

THE COURT:  I just want to make sure -- I do want to hear your thoughts.  I just want to make sure I'm seeing it from everyone's perspective.

Mr. Payton, do you agree with the general gist of where we are?

MR. PAYTON:  Yes.

THE COURT:  And Mr. Pereira, do you agree?

MR. PEREIRA:  It is my position, your Honor, that the parties have consented to have the issue resolved in your court.

THE COURT:  Okay.  So let me hear -- that's -- I appreciate that.

Mr. Wooten, tell me your thoughts.

MR. WOOTEN:  So, your Honor, I agree with Mr. Pereira's statement that initially -- and I think we covered this when we had the settlement -- the mediation with you or settlement conference with you on the underlying claim. It was brought up that there was a lien existing.  Mr. Pereira participated on the lien claim quantum meruit, however they want (unintelligible) their claim.  And that claim had been asserted previously with respect to Ms. Williams.  And we had discussions about it, as you well recall.

Case 18-16866   Doc 141-4   Filed 08/02/26   Entered 08/02/26 14:26:12   Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case   Page 13 of 18

4

And so at the time, the only claim that had been made was that Ms. Williams may owe DJC something.  As you know I was employed by DJC.  I contracted for DJC with Ms. Williams.  The contract -- Ms. Williams executed with a contract that I previously used in cases in the Northern District of Illinois, that I went over with her and explained to her and she executed.  So I understood what that contract said and how there should be a calculation of fees in the event there was a termination.  And the claim appeared to be against her and between DJC and her.  And I had consented (unintelligible) the circumstances I believe that your court absolutely could resolve that lien claim as between the two of them and no issue.

But when the actual calculation came, went to the Court just a few days ago, I believe the request appeared to be for 80 percent of the anticipated contingency fee that bankruptcy special counsel might be awarded in the future from, you know, the settlement.  And at that point my position had to change because, you know, I'm a retained professional under the Bankruptcy Code and my compensation has to be determined by the bankruptcy court and so I couldn't agree to litigate whether I will be paid and how much in your court.  It is not where that happens.  So that's why I had to change my position as to whether or not your court could litigate the issue from that point.

Case 18-16866   Doc 141-4   Filed 08/02/26   Entered 08/02/26 14:26:12   Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case   Page 14 of 18

5

But I stated I'm happy to come to a settlement conference and try to (unintelligible) the situation and do what we can to settle.  But I just didn't believe that if the claim is seeking a percentage of bankruptcy professional compensation, I think that mandates that it must go back to the bankruptcy court.

THE COURT:  I actually think I am agreeing with you, Mr. Wooten, conceptually, so -- but let me hear from Mr. Pereira.  Mr. Wooten is using terms like "agreeing to litigate the issue" which suggests that there would be a resolution, either here or before Judge Perry, which I think is putting the cart way before the horse because to me the issue is do we even need to litigate it if we can reach an agreement.

So the way -- and I, you know, consulted with some judges who are more familiar with this from the bankruptcy side of things.  The way I see this, without deciding the issue, if Mr. Wooten's view is correct, that any -- if there -- if we can't reach an agreement, it has got to get resolved in the bankruptcy court.  Presuming that's correct -- I'm not saying it is or isn't -- I -- there doesn't seem anything that prohibit -- to prohibit all of us from sitting down in the district court setting to try and mediate the claims, so then you could present, presuming Mr. Wooten is correct, you could present to the bankruptcy court this is a proposed agreed resolution of the issue.

Case 18-16866   Doc 141-4   Filed 08/02/26   Entered 08/02/26 14:26:12   Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case   Page 15 of 18

6

And if everyone is on -- if everyone is in agreement with that approach, then I think we should have a settlement conference.  But if someone thinks even doing that is improper, I think we should talk about that.

So let me start -- Mr. Wooten, do you think -- it sounds to me like you're saying you would be willing to sit down, try to resolve the case.  But if we couldn't, you would say that needs to go before the bankruptcy court and be litigated there; is that correct?

MR. WOOTEN:  Yes, sir.

THE COURT:  Okay.  Mr. Pereira, where do you see the issue?

MR. PEREIRA:  Well, I am not opposed to sitting down before you, your Honor, and in a settlement conference in an effort to resolve this.  I also believe that you have concurrent jurisdiction and that it could be litigated before you.  But perhaps that's putting the cart before the horse.

And so the first thing that we should do is try to resolve it through a settlement conference.  And if that's not possible, perhaps both sides could then brief the issue as to whether or not the district court has concurrent jurisdiction with the bankruptcy court to make a determination of the quantum meruit fees that are owed to DJC Law.

I'm not necessarily asking the Court to make a determination of the total special counsel fees that are owed

Case 18-16866   Doc 141-4   Filed 08/02/26   Entered 08/02/26 14:26:12   Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case   Page 16 of 18

7

to special counsel in total.  I'm just asking the district courts to make a determination of the quantum meruit fees that are owed to DJC Law because the district court is the court where the underlying litigation occurred.  That's where the lien has been filed and that's -- that's the court with the knowledge of the work that has been done up to this point and -- and which counsel was retained at what time in this court.

And so I'm in agreement with the structure that you're proposing, your Honor, that we have a settlement conference first and try to resolve the issue.  And then based on that settlement conference, if we're able to agree, have the Court on paper or we would paper some sort of recommendation to the bankruptcy court with regards to the fee split and abide by that before the bankruptcy court and have that formally done through the bankruptcy court.

But my position right now is that you have concurrent jurisdiction to make a determination as to our quantum meruit fees.

THE COURT:  Okay.  And do you agree we can do the settlement conference without me or Judge Perry resolving the issue of concurrent jurisdiction?

MR. PEREIRA:  I do agree with that, yes.

THE COURT:  Okay.  Mr. Payton, what's your view on all this?

Case 18-16866   Doc 141-4   Filed 08/02/26   Entered 08/02/26 14:26:12   Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case   Page 17 of 18

8

MR. PAYTON: Well, that -- I guess that goes to -- I don't disagree, first. Let me just answer that question that we could do a settlement conference and it would be -- the Court could undertake without regards to that question of jurisdiction (unintelligible) apply the issue.

My position would just bring me -- in the statement (unintelligible) just in case this is not a settlement conference but is a resolution of some sort before your Honor, then I wanted to make sure, you know, what rule would apply. Because it is kind of confusing as to what the district court's referral to your Honor was. It is a referral for resolution. So I'm not sure if that's resolution by settlement conference or resolution by (unintelligible) litigate before Judge Weisman.

THE COURT: Yeah. Fair point.

MR. PAYTON: But I'm on board to a settlement conference.

THE COURT: Okay. All right. Have we talked about dates for that settlement? Have we talked about dates for that settlement conference and then the other question is -- unfortunately, we don't have counsel for Wells Fargo here. I don't think they have a dog in this race, but I want to make sure everyone is in agreement with that.

Mr. Wooten, you don't think Wells Fargo needs to sit down for this portion of the settlement conference. Do you

Case 18-16866   Doc 141-4   Filed 08/02/26   Entered 08/02/26 14:26:12   Desc Exhibit
Exhibit D - April 3 2025 Transcript from District Court Case   Page 18 of 18

9

agree?

MR. WOOTEN:  I would agree.  And I think that's -- the position, as I understand, they have raised to us is that (unintelligible) remain confidential for litigation agreement or settlement conference agreement about who gets what, when, where, and how (unintelligible) they care.

THE COURT:  Okay.  Mr. Payton, you agree?

MR. PAYTON:  Yes.

THE COURT:  And Mr. Pereira, you agree?

MR. PEREIRA:  Yes.

THE COURT:  Okay.  Have we talked about dates?  If not, I'll have Ms. Owens pull up a calendar.

MR. WOOTEN:  We have not, your Honor.

MR. PAYTON:  We have not, your Honor.

THE COURT:  Ms. Owens -- I don't have access to my calendar right now, so Ms. Owens is going to look at it and give us a couple dates.  I'm thinking we can do it by video.  If anyone objects, please say so.

All right.  Hearing no objection, we can do it by video.

MR. PAYTON:  No, your Honor.

THE COURT:  I know the next few weeks are not great for me.  But let's see what Ms. Owens comes up with.

Does anyone have any trials coming up or any appeals, anything that, you know, is going to take a block of time?