**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| ANDREA D. WILLIAMS, | ) | Case No. 18-16866 |
| | ) | |
| Debtor. | ) | Hon. Daniel R. Fine |

**SPECIAL COUNSEL'S RESPONSE TO DJC LAW, PLLC'S OBJECTION TO HIS**
**APPLICATION FOR COMPENSATION (DKT. 137)**

NOW COMES Nicholas Wooten, Special Counsel to the Chapter 7 Trustee, Alex Moglia

("Special Counsel" or "Wooten"), and responds to the Objection of DJC Law, PLLC ("DJC") to

Special Counsel's Application for Compensation (Dkt. 137) as follows:

**INTRODUCTION**

DJC's Objection rests on a chain of factual assertions that the record—much of it DJC's

own filings—contradicts. DJC asserts that Wooten was its employee through the February 24,

2025 settlement; that the settlement was "substantially completed" on DJC's watch; that a

December 27, 2023, letter is Wooten's "sole" and operative compensation entitlement; and that

DJC, as an entity, holds a recovery right "superior" to that of the Court-appointed Special Counsel.

Each assertion is refuted below, in most instances by documents DJC itself has filed or authored.

Before reaching those points, however, the Objection founders at the threshold: DJC is not

a professional employed under § 327 and is not a creditor of this estate, and it therefore lacks

standing to object to how the estate compensates the professionals it employed. And on the merits,

the estate's fiduciary—the Chapter 7 Trustee—has filed a position statement supporting Special

Counsel's Application and confirming that this matter was litigated and settled under Wooten's

uninterrupted representation (Dkt. 133). The Objection should be overruled.

**ARGUMENT**

**I.      DJC Lacks Standing to Object to the Compensation of an Estate Professional.**

1.   Standing to object to a professional's compensation belongs to those with a direct pecuniary stake in that question—the estate's professionals and the creditors whose distributions such payments diminish. *Peoples v. Radloff (In re Peoples)*, 764 F.3d 817, 820 (8th Cir. 2014); *In re Andreuccetti*, 975 F.2d 413, 416 (7th Cir. 1992) (standing limited to those "directly and adversely affected pecuniarily," a standard "more exacting than" general Article III standing). DJC is neither. DJC persuaded the District Court that it is *not* a professional employed under § 327, and it is not a creditor of this estate. (Dist. Ct. Dkt. 120-1, 128, 130). Its only asserted interest is an equitable quantum meruit claim against the settlement fund. DJC has said as much itself. Moving to intervene in the district court, DJC represented that "Neither the bankruptcy estate nor Wells Fargo have a stake in DJC's recovery of fees and expenses should Ms. Williams recover in this case," and that "Only DJC can protect this interest." (Dist. Ct. Dkt. 63, at 4.) Having told that court its fee interest was separate from the estate's—that the estate had no stake in it and could not represent it—DJC cannot now recast that same interest as a right to contest what the estate pays its own retained professionals. DJC's only basis to make this claim is its own attempted repudiation of the employment agreement that defines DJC's only rights to compensation.

2.   That interest supplies no standing to object here. A quantum meruit claimant's stake runs to the fund; it is not a stake in the distinct question of what the estate owes the professionals it employed under § 327. This Court can and should determine DJC's quantum meruit claim in due course, but the right to assert that claim is not a license to contest the compensation of the estate's retained counsel. Standing to seek one's own equitable recovery is not standing to interfere with the estate's payment of its professionals.

2

3.   DJC's previously asserted attorney's lien does not change the analysis, because no lien validly attached. The settlement fund is property of the estate, and the automatic stay bars "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). That bar continues, by § 362(c)(1), for as long as the property remains property of the estate, which the fund did at all relevant times. Any attempt by DJC to fasten a lien on the fund was therefore an affirmative act barred by the automatic stay and, absent relief from stay that DJC never sought, is of no effect. "The automatic stay generally prohibits, among other actions, "any act to create, perfect, or enforce any lien against property of the estate" or "any act to collect, assess, or recover a claim." 11 U.S.C. § 362(a)(4) & (6)." *Reedsburg Util. Comm'n v. Grede Foundries, Inc. (In re Grede Foundries, Inc.)*, 651 F.3d 786, 790 (7th Cir. 2011). "Actions taken in violation of an automatic stay ordinarily are void." *Middle Tenn. News Co. v. Charnel of Cincinnati*, 250 F.3d 1077, 1082 (7th Cir. 2001) (internal citations omitted). DJC holds no secured interest—only the unsecured quantum meruit claim addressed above—and thus lacks standing to object to Special Counsel's Application.

## II.   DJC's Factual Premise Is False: Wooten Left DJC in October 2024, Months Before the Settlement.

4.   The Objection's central factual premise—that Wooten "was employed by DJC" when the settlement terms were reached on or before February 24, 2025 (Dkt. 137 ¶¶ 11–12), and that Wooten "provided no services related to the settlement" (¶ 7)—is contradicted by DJC's own records. Wooten notified DJC of his departure by letter dated **October 5, 2024**, proposing the separation and identifying the case inventory to be allocated (Ex. A). Indeed, DJC concedes the point: in its contemporaneously filed Response, DJC states that "Wooten terminated his employment with DJC on October 10, 2024" (Dkt. 136 ¶ 26) and DJC's reconstructed time entries end on October 2, 2024. Wooten had thus left DJC more than four months before the material

settlement terms were reached on February 24, 2025—a settlement Wooten negotiated as Special Counsel through the Cheeley Law Group, LLC, not as an employee of DJC.

5.  DJC's assertion that the settlement was "substantially completed while Wooten was employed as an attorney at DJC" (¶ 12) collapses on those same dates. The settlement in principle was not reached until February 24, 2025—long after Wooten had left DJC, after DJC was terminated by this Court from any professional role, and while Wooten's service as Special Counsel continued through the Cheeley Law Group, LLC. DJC cannot claim credit for a settlement reached months after its own timekeeping for case related work stops. More fundamentally, in a bankruptcy case there is no settlement at all until the Court approves it: no recovery existed until this Court entered its order approving the compromise under Federal Rule of Bankruptcy Procedure 9019 on June 2, 2026 (Dkt. 111)—roughly twenty months after Wooten left DJC and eighteen months after this Court terminated DJC as Special Counsel. DJC's premise that the settlement was "substantially completed" on its watch fails as a matter of law: the event that created the recovery did not occur until roughly 18 months after DJC had been terminated by this court.

6.  Nor did Wooten's service as Special Counsel begin, as ¶ 7 implies, only upon the June 2, 2026 substitution of Nick Wooten, LLC. Wooten was employed as Special Counsel by this Court's Order of May 21, 2024 and served continuously thereafter—first through DJC, then through Cheeley, and now through Nick Wooten, LLC—as each firm affiliation changed. The Trustee confirms that the litigation proceeded "under the uninterrupted watch and representation of Mr. Wooten as Special Counsel" (Dkt. 133). It was Wooten, not DJC, who negotiated and secured the settlement.

7.  DJC's invocation of the "financial and reputational risk inherent in a contingency engagement" (¶ 11) fares no better. DJC bore no financial risk through settlement, because the

Cheeley Law Group, LLC repaid DJC's advanced expenses in December 2024 at or near DJC's termination from the case. DJC's case expenses were paid at a point in time when Wooten believed resolution was years away. DJC cannot claim the settlement as the fruit of a financial risk it did not carry.

**III.      DJC Relies on a Superseded Employment Agreement and Omits the Operative One.**

8. DJC contends that Wooten's entitlement is "limited to and by his employment agreements" (¶ 8) and that the December 27, 2023 letter it attaches as Exhibit A to this filing sets forth Wooten's "sole entitlement to compensation" (¶ 9). DJC knows better, because DJC has already told the district court otherwise. When it suited DJC's posture in the district court, DJC represented that the operative instrument was a *later* letter agreement—dated **May 31, 2024**, effective July 1, 2024—which DJC attached to its own quantum meruit fee submission served on the district court and counsel on March 24, 2025 as "Exhibit 2, Wooten Letter of Employment." That later agreement states on its face that it is "an amendment to the previous letter of employment," and by its terms it superseded the December 27, 2023 letter. Having identified the May 31, 2024 amendment as the governing contract when it needed a quantum meruit theory in the district court, DJC now files the *superseded* December 2023 letter in this Court and says nothing of the amendment—because only the earlier, dead version contains the fifty-fifty fee split on which its percentage demand depends. A true copy of the operative May 31, 2024 letter agreement is attached as Exhibit C from Wooten's own records *sans* redactions.

9. The choice of which letter to file is not academic; it serves as the basis of DJC's percentage theory against Wooten. The superseded December 27, 2023 letter contained a provision purporting to split fees on "Transferred Cases" fifty percent to the Firm and fifty percent to the departing attorney. The operative May 31, 2024 amendment *deleted* that fifty-fifty split, replacing

it with a provision that, if a client elects to leave with the departing attorney, "the Firm will still be entitled to its attorney fees pursuant to the fee agreement the clients have with the Firm"—that is, the client's own contract that DJC has worked so hard to ignore in this case. The operative agreement contains no residual fifty-percent-to-the-Firm entitlement of any kind. DJC's entire percentage demand thus rests on a clause that no longer exists—one its own later agreement struck—and DJC reaches that clause only by presenting this Court the very document it told the district court was not operative. This pattern follows DJC's conduct throughout: DJC does not take a position and hold it, but selects, filing by filing and forum by forum, whichever version of the facts its immediate objective requires forcing both Wooten and the Court into an unbounded game of legal "whack-a-mole" without any legal justification.

10. DJC's own principal admitted, in writing, that the fifty-fifty split was deliberately removed from the May 31, 2024 employment letter. On May 31, 2024—the same day the amended letter issued—Daniel Christensen circulated the new employment letters to the firm's attorneys and explained the change. A true copy of that email is attached as Exhibit B. Christensen wrote that "the only real substantive change is the 'divorce clause' where we set out how the fees would be split if the attorney left the firm," and that "we have just removed that and allowed Texas law to control." He explained that a departing attorney's clients "always have the option to move to the lawyer leaving the firm, but the firm can maintain a lien for its fees and expenses," and that because "trying to 'pre-negotiate' the situation didn't work," the firm would "just let Texas law control." The fifty-fifty split on which DJC's percentage claim depends was thus not lost by accident; DJC's founder confirms it was intentionally eliminated and replaced with a lien for fees and expenses— a claim measured by reasonable value, not a share of the recovery.

6

11. The reversal reflected in DJC's current filings is not an isolated inconsistency; it is the culmination of a pattern. Since it first placed a value on its claim, DJC has advanced a succession of shifting and mutually incompatible fee theories, each recalibrated when the last drew resistance, and each seeking a percentage of the recovery. The shifting began early. Andrea Williams terminated DJC on October 25, 2024, and within weeks DJC conceded in the district court that it "no longer represents Ms. Williams" and "will no longer represent the Trustee," and that it was therefore amending its lien to "seek[] fees based on quantum meruit as opposed to the agreed fee." (Dist. Ct. Dkt. 77, at 1–2.) DJC thus told that court, in its own words, that quantum meruit—not a contingency percentage—was its remedy. Only later did its demands escalate. Set out in the order DJC advanced them, DJC's positions have been:

**(a)** March 24, 2025—In the District Court, DJC sought a "quantum meruit fee" of $415,837.08, claiming 80% of the full 45% fee that DJC anticipated Wooten would request based on a claim that 80% of the docket entries occurred while Wooten was employed by DJC. In this request, DJC expressly relied on the later May 31, 2024 letter—the amendment that had removed the fifty-fifty split—as the operative "Wooten Letter of Employment."

**(b)** March 28, 2025 (letter). DJC stated that its "fee interest is not based on the attorney client agreement," that it was "only seeking a court approved quantum meruit fee," and that it was "not seeking a recovery over and above" the amount approved as Special Counsel's fee.

**(c)** April 3, 2025 (hearing before Magistrate Judge Weisman). DJC represented that the fee issue was "between DJC and the Trustee" and that DJC was not seeking a fee "over and above" what would be awarded to Special Counsel (Tr.12:25–13:6).

Yet in its Application here DJC demands a flat forty-five percent of the fund—some $120,000 more than Special Counsel seeks—precisely the "over and above" recovery it told the district court it would not pursue.

**(d)** District court briefing (Dist. Ct. Dkt. 120-1, 128, 130). DJC disavowed any status as a professional employed under § 327, arguing that it was "ineligible for § 330 relief as a matter of law" and that "the only available vehicle is quantum meruit."

**(e)** June 16, 2026 (Application, Dkt. 123). DJC abandoned the quantum meruit framing and demanded a flat forty-five percent contingency of $519,796.35—while conceding in the same document that it "does not maintain time records for contingency based cases" (Dkt. 123 ¶ 23).

**(f)** July 28, 2026 (Response and Objection, Dkt. 136, 137). DJC reframed the claim once more as "quantum meruit" measured by the same forty-five percent figure—insisting the contingency agreement's "terms have no bearing" and are "irrelevant" (Dkt. 136 ¶¶ 2, 18)— then applying a "less 50% split" deduction of $259,898.17 drawn from the very fifty-fifty clause DJC's founder confirmed was deleted, helping itself to Wooten's portion under its logic despite the disputed nature of the Texas litigation, to conclude that Wooten "is entitled to no portion" of the fee (Dkt. 136 ¶¶ 25–27).

12. The common thread is unmistakable. At every station on this timeline, DJC demanded a percentage of the recovery—eighty percent of the entire contingency fee, then the entire forty-five percent contingency fee, then a fifty-fifty division based on a superseded version of an employment agreement plus capturing Wooten's share for a disputed debt that is subject to other litigation—and shifting the label on its theory (contract, then quantum meruit, then quantum meruit

8

measured by the contingency) to fit whatever forum and posture it presently occupied. What DJC never did, at any point, was pursue the one form of recovery the law actually affords a law firm terminated before the recovery: the reasonable value of the services it actually rendered, proven by the hours reasonably expended multiplied by a reasonable rate, and bounded by the without-cause limitation in its own contract. Illinois and Texas law alike bar a discharged or departed firm from collecting a percentage-based contingency untethered to the value of services rendered; a terminated firm's remedy sounds in quantum meruit measured by reasonable value, not in a share of a contingency fee created by the work of another.

13. That lawful measure is now unavailable to DJC, because DJC never proved it and can no longer do so. A party seeking compensation bears the burden of establishing the reasonable value of its services with competent evidence. DJC has not carried—indeed, has affirmatively defeated—that burden as to the only measure open to it. It admits it kept no contemporaneous time records (Dkt. 123 ¶ 23). Its sole attempt to supply hours is a post-hoc reconstruction that is, by DJC's own account, not a contemporaneous record, and that Special Counsel has shown to be unreliable in every particular (Dkt. 125 ¶¶ 24–47). And in its most recent filing DJC expressly disclaims the contract measure altogether, insisting the agreement's terms are "irrelevant" and "have no bearing" (Dkt. 136 ¶ 18). Having elected, filing after filing, to stake its claim on percentage recoveries it has no legal right to—and having offered no competent proof of the hours-times-rate value that is its only lawful remedy—DJC has waived that remedy. The record on its application is closed, and a quantum meruit value DJC declined to prove cannot be conjured now.

14. DJC has thus put the matter to the Court as all or nothing: it seeks the entirety of a percentage recovery to which it is not entitled, and it has proven no lesser, lawful amount in the alternative. Because DJC has no right to the percentage it demands and has waived the only

measure by which it might have recovered anything, the correct result on DJC's all-or-nothing posture is nothing.

15. Just like its attempt to switch sides of the bankruptcy professional argument between the district court and this court, DJC cannot be allowed to revive a superseded employment letter as a basis to claim a percentage of fees. DJC told the district court the controlling instrument is the May 31, 2024 amendment, which by its own terms superseded the December 27, 2023 letter for the express purpose of removing the percentage split that DJC claims in this Court. The fact that DJC would present to this Court the very document it told the district court was not operative— solely to revive the percentage split its own amendment deleted—casts grave doubt on the good faith of its claim.

16. Even if the superseded December 27, 2023 version controlled—and it does not—it is unenforceable as a matter of law as argued further in the next section.

## IV.    DJC Has No Legal Right to the Percentage It Seeks, Under Either Its Own Contract or the Governing Rules of Illinois and Texas.

17. DJC cannot escape the limits of its own contract by relabeling its demand as quantum meruit. In its Response, DJC now insists that its contingency fee agreement's "terms have no bearing" and are "irrelevant" (Dkt. 136 ¶¶ 2, 18), and that it seeks only the reasonable value of its services. DJC takes that position for a transparent reason: the contract measure yields far less than the percentage it covets. But a party to an express contract governing the subject matter of the dispute may not discard that contract in favor of a larger recovery in quantum meruit. As the Illinois courts put it: "It is well established … that actions in quasi-contract, such as quantum meruit, are precluded when there is an express contract between the parties regarding the work that was performed. Simply put, if an express contract exists between the parties concerning the same subject matter, a party cannot assert a claim on a contract implied in law." *Schroeder v. Sullivan*,

10

2018 IL App (1st) 163210, ¶ 46, 104 N.E.3d 460, 472. Quantum meruit is an equitable remedy available where no adequate contractual remedy exists; it is not a device by which a contracting party may improve on the bargain it made. DJC's engagement and employment agreements both address precisely the compensation DJC now seeks—fixing its post-termination recovery at the reasonable value of time actually expended—and DJC is bound by that measure whether or not it prefers the result. That measure is, moreover, one the law construes strictly in the client's favor: the break-up limitation on attorney compensation is read "strictly in favor of the clients," *In re Solis*, 610 F.3d 969, 972 (7th Cir. 2010), with ambiguities in a lawyer-drafted fee agreement resolved against the drafting lawyer and in favor of the consumer it was meant to protect. DJC may not rewrite that agreement upward now. Independently, DJC's percentage demand is barred as an ethical matter: the Seventh Circuit construes Rule 1.5 of the Rules of Professional Conduct to include "an implicit requirement that an attorney not assert unreasonable or baseless demands for attorney fees contrary to his fee agreement." *Goyal v. Gas Tech. Inst.*, 718 F.3d 713, 720–21 (7th Cir. 2013); accord *Goyal v. Gas Tech. Inst.*, 732 F.3d 821, 826 (7th Cir. 2013). DJC's demand for a forty-five-percent contingency—unsupported by time records and contrary to the reasonable-value terms of its own agreements—is precisely such a demand. Nor do the cases on which DJC relies aid it. Illinois awards a discharged contingency lawyer the full contingency percentage as reasonable value only where the firm's own work produced the recovery before discharge—as in *In re Estate of Callahan*, 144 Ill. 2d 32 (1991), and *Andrew W. Levenfeld & Assocs., Ltd. v. O'Brien*, 2024 IL 129599, where the settlement was reached within sixty days of discharge on terms the firm had already generated. Here the opposite is true: Wooten left DJC on October 5, 2024, DJC's reconstructed time shows no work on the case after October 2, 2024, DJC was terminated as Special Counsel in December 2024, an agreement in principle, subject to this Court's

approval, was reached in February 2025, the actual settlement agreement and release for the case were not signed until April 16, 2026, and no settlement existed until this Court's Rule 9019 approval on June 2, 2026. Additionally, DJC's cited cases also require the claimant to prove reasonable value with competent, specific evidence, which DJC—admitting it kept no time records (Dkt. 123 ¶ 23)—cannot do.

18. Independently, the percentage recovery DJC demands is barred by the public policy of both jurisdictions whose law could apply. Under Illinois law, *Albert Brooks Friedman, Ltd. v. Malevitis*, 304 Ill. App. 3d 979, 987 (1st Dist. 1999), holds that "Illinois public policy prohibits a discharged lawyer from receiving a percentage-based fee where said fee was not related to the value of services rendered, the client does not consent to the fee arrangement, and the discharged attorney has no responsibility for the pending litigation." Each condition is present here: DJC seeks a percentage untethered to the value of its services, without the Trustee's or the debtor's consent, and with no responsibility for the litigation after its termination. ISBA Professional Conduct Advisory Opinion 12-11 (May 2012) confirms that a discharged attorney may not share in a division of fees with successor counsel absent the client's written consent. DJC's percentage demand contravenes Illinois public policy.

19. As to DJC's argument based on its employment agreement with Wooten, the result is the same—indeed clearer—under Texas law, which DJC concedes governs. The Texas Disciplinary Rules of Professional Conduct are quasi-statutory, carry the force and effect of statute, and express the public policy of the State; though not binding on the courts, they are "highly persuasive and given the utmost consideration." *Whiteside v. Griffis & Griffis, P.C.*, 902 S.W.2d 739, 743 n.6 (Tex. App. 1995). Rule 5.06(a) prohibits any "partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship," and *Whiteside*

holds that an indirect financial disincentive to a departing lawyer—a clause that penalizes the lawyer financially for leaving—"is therefore void as against public policy." *Id.* at 744. DJC's fifty-fifty split, by which the firm claims half of the fees a departed lawyer earns after leaving, is exactly such a provision, and it is void and unenforceable under Texas law. Reinforcing the point, Texas Ethics Opinions 459, 590, and 699 construe Rule 5.06(a) to prohibit a firm from collecting a portion of the fees a lawyer earns after departure—even where the client elects to follow the departing lawyer. DJC thus has no right under Texas law to any share of the fees Wooten earned after leaving DJC. Its remedy, if any, lies against its former client, not against Wooten—and DJC may not invoke Illinois law to collect what Texas law forbids.

20. In sum, DJC has no lawful path to the percentage it demands. If the contract governs, it caps DJC at the reasonable value of time expended—which DJC has not proven and has now disclaimed. If DJC abandons the contract for quantum meruit, the percentage remains barred by the public policy of Illinois and Texas alike, and DJC has still not proven its employees provided any services which reasonably contributed to the recovery. Either way, the percentage recovery is unavailable, and DJC has established no lesser lawful amount in its place.

## V.    DJC Performed No Compensable Services and Holds No Recovery Right Superior to Special Counsel's.

21. DJC asserts that its "right to recover the value of the services it performed is superior to any claim Wooten may assert" (¶ 13). But DJC, as an entity, performed no services; people did. DJC's own representations to the district court refute any claim of a superior recovery right. At the January 8, 2025 hearing, when the court asked whether DJC was "trying to intervene for anything beyond just the establishment of the lien," DJC answered: "No, ma'am. Just to establish the lien for attorney's fees and expenses that we've incurred during the period of time that we represented Ms. Williams and the trustee." DJC further confirmed that it would not seek discovery

13

and—asked whether it would contend that any proposed settlement amount was "too high or too low"—answered: "That's correct. We are just here to preserve our interest and our fees and the expenses that we incurred." (Dist. Ct. Dkt. 88 - Jan. 8, 2025 Hearing, Tr. 15:21–16:14.) A party that told a federal court it was a passive lienholder—taking no role in the settlement, seeking no discovery, and not contesting the settlement—cannot now claim it built the value of that settlement or holds a recovery right superior to the counsel who did. DJC has not proven that any remaining employee at DJC provided any services that led to the resolution of the case. The person who performed the work is Wooten—the Court-appointed Special Counsel—with the able assistance of his contract paralegal whom DJC paid as a contractor and whose cost was treated as a case expense that has already been reimbursed to DJC. DJC cannot establish otherwise, because DJC admits that it "does not maintain time records for contingency based cases" (Dkt. 123 ¶ 23). Its later effort to supply an after-the-fact reconstruction of the hours purportedly worked is, by its own account, not a contemporaneous record but guesswork prepared by counsel with no involvement in the underlying litigation, no knowledge of its intricacies, and no experience in the field. Special Counsel has detailed the deficiencies in that reconstruction at length (Dkt. 125 ¶¶ 24–47) and does not repeat them here. The point for present purposes is narrower: a firm has no quantum meruit interest independent of the individuals who performed the work, DJC concededly has no reliable measure of any such time, and the value of the work actually done is captured in Special Counsel's Application, not in a separate entity-level claim.

22. DJC's premise that its "employment during the relevant period was expressly authorized by this Court" (¶ 13) omits the dispositive fact: this Court terminated DJC's employment as Special Counsel by its Order of December 10, 2024 (Dkt. 59). DJC is not a currently retained professional, and § 330 compensation runs to the professional the estate

presently employs—Nick Wooten and his firm Nick Wooten, LLC. To the extent ¶ 13 incorporates DJC's contemporaneously filed Response to Special Counsel's Objection to the DJC Application (Dkt. 136), Special Counsel's reply in support of that Objection, filed separately, addresses and refutes those arguments, and Special Counsel incorporates that reply here rather than repeating it.

23. The conduct of the Cheeley Law Group, LLC—the other firm through which Wooten served as Special Counsel during this case—exposes DJC's position for what it is. Cheeley stood in precisely the same structural posture as DJC: it employed Wooten for a portion of the representation, and, like DJC, it does not practice this genre of consumer litigation against mortgage servicers, concentrating instead on products-liability, catastrophic-injury, and wrongful-death matters. Yet Cheeley reached the opposite conclusion DJC now presses. Cheeley recognized what the record plainly shows—that Wooten was the attorney who performed the services in this case and the attorney entitled to the resulting fee—and it has never claimed a share of that fee for work it did not do. Cheeley has asked only that it be reimbursed for the expenses it advanced, which Wooten agreed to and which have been disclosed and explained herein. Given the same facts and the same relationship to the same attorney, Cheeley saw no entitlement to Wooten's fee; DJC's contrary claim is not a good-faith reading of that arrangement but an attempt to extract a percentage of a recovery its employees did not generate.

**VI.    The Capacity and Fee-Sharing Objections Fail.**

24. DJC's objection that the Application was filed in Wooten's individual capacity (¶ 1) is moot. The renoticed Application (Dkt. 119) and this response are filed by and on behalf of Nick Wooten, LLC, the firm the Court employed as Special Counsel by its June 2, 2026, Order continuing Wooten's employment as special counsel (Dkt. 111). Any earlier caption is cured, and no substantive right turns on it.

25. DJC's contention that Wooten's statement that he "has no agreement to share compensation with any other attorney in this case" (Dkt. 113 ¶ 28) is false or misleading (¶ 14) misunderstands both the facts and Rule 2016(b). Rule 2016(b) requires disclosure of agreements to share *compensation* for services rendered to the estate. The arrangement DJC points to is not that. Rusty Payton was retained directly by the debtor, Andrea Williams, to represent *her* interests in the fee-dispute litigation that DJC itself initiated against her recovery by intervening in the district court case. Payton was Williams's counsel, not Special Counsel's; Payton worked under no direction from Cheeley or Wooten, submitted invoices, and was paid. The Cheeley Law Group, LLC advanced Payton's fees so that Williams would not bear the cost of defending against DJC's overreach triggered by Wooten's departure from DJC. After Wooten's departure from Cheeley, Wooten agreed to reimburse Cheeley for the payment of Payton's fees which were a non-recoverable expense in this litigation. The purpose of that agreement was to prevent Cheeley from suffering a financial loss it incurred protecting the debtor from DJC's overreach. Special Counsel reimbursing his former firm for advanced, non-recoverable third-party expenses is not a division of Special Counsel's compensation, and it triggers no disclosure obligation under Rule 2016(b).

26. This also explains the figures DJC contrasts. The $17,742.33 reflected at Docket 113-2 is the recoverable case-expense amount properly chargeable to the estate. DJC's figure of "slightly in excess of" $61,000 improperly combines that recoverable amount with the separate, non-recoverable Payton reimbursement—expenses deliberately excluded from the estate's recoverable-expense line precisely because they are not recoverable under the terms of the employment agreement. The two numbers describe different categories; the gap between them is not a misrepresentation but the difference between recoverable and non-recoverable expenses. And the Payton expense exists primarily because of DJC's anti-client, abusive conduct through this fee

16

litigation that forced the debtor to retain independent counsel. Wooten's statement at Docket 113, paragraph 28, was accurate.

## CONCLUSION

For the foregoing reasons, Special Counsel respectfully requests that the Court overrule DJC's Objection (Dkt. 137)—for lack of standing and, in the alternative, on the merits—approve and allow compensation to Nick Wooten, LLC, as Special Counsel under § 330, and grant such other and further relief as the Court deems just.

Respectfully submitted,

NICK WOOTEN, LLC

By: */s/ Nick Wooten*

Nicholas H. Wooten
NICK WOOTEN, LLC
3125 Carlton Road
Cumming, GA 30041
833-937-6389
nick@nickwooten.com

Special Counsel to the Chapter 7 Trustee

## CERTIFICATE OF SERVICE

I, Nick Wooten, an attorney, certify that I served a copy of the foregoing document on each party shown on the following Service List by the method shown thereon on August 3, 2026.

*/s/ Nick Wooten*

Special Counsel for the Trustee

17

## SERVICE LIST

*ECF Service:*

Adam G. Brief
Office of the United States Trustee
219 South Dearborn, Room 873
Chicago, IL 60604
*Counsel for the U.S. Trustee*

Alex D. Moglia, Trustee
Moglia Advisors
1325 Remington Rd., Ste. H
Schaumburg, IL 60173

Thomas E. Springer
Springer Larsen, LLC
300 South County Farm Road, Suite G
Wheaton, IL 60187

*Counsel for Trustee Alex D. Moglia*

Carrie V. Hardman
Winston Taylor
200 Park Avenue
New York, NY 10166

*Counsel for Wells Fargo Bank, N.A.*

Rusty A. Payton
Payton Legal Group, LLC
20 North Clark Street, Suite 3300
Chicago, Illinois 60602

*Counsel for the Debtor*

Thomas W. Toolis
Jahnke, Sullivan & Toolis, LLC
10075 West Lincoln Highway
Frankfort, IL 60423

*Counsel for the Debtor*

Gregory K. Stern
Dennis E. Quaid
Monica O'Brien
Rachel S. Sandler
Gregory K. Stern, P.C.
53 West Jackson, Suite 1442
Chicago, IL 60604

*Counsel for DJC Law, PLLC*

All creditors on the matrix

***Via email service upon the following:***

Andrea D. Williams, Debtor